572 A.2d 1214

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Luis ROLDAN, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 27, 1989.

Decided March 28, 1990.

Burton A. Rose, Philadelphia, for appellant.

Stuart Suss, Deputy Dist. Atty., Nicholas J. Casenta, Jr., Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

OPINION

McDERMOTT, Justice.

■ The appellant, Luis Roldan, was charged with and convicted by a jury of two counts of Delivery of a Controlled Substance [1] and two counts of Possession of a Controlled Substance.[2] Trial counsel subsequently filed post-trial motions and then withdrew from the case. Post-trial counsel was retained and supplemental post-trial motions were filed by leave of court. These motions were denied and on February 18, 1987, appellant was sentenced to a period of incarceration of not less than 12 nor more than 59 months. His sentence for the second Delivery count was directed to run consecutive to the first. This resulted in an aggregate sentence of not less than 24 nor more than 118 months imprisonment. A motion for modification of sentence was filed and denied and the judgment of sentence was affirmed on appeal by the Superior Court. 377 Pa.Super. 656, 541 A.2d 1154. Appellant argues that he was denied a fair trial by reason of the remarks, questions and demeanor of the trial judge which suggested a disbelief of the testimony offered by the defense.[3] He also asserts that trial counsel was ineffective in failing to timely object to the improper comments and questions and in failing to request a cautionary instruction in that regard.

1. 35 P.S. § 780–113(a)(30).

2. 35 P.S. § 780–113(a)(16).

3. The appellant also argues that the trial court erred in not granting his request for a mistrial after a Commonwealth witness, a Pennsylvania State Trooper, testified that two other undercover cases in which he was involved resulted in successful adjudications. Because the trial court ordered the remark stricken and told the jury to disregard that portion of the testimony, we are satisfied that any potential prejudice was avoided by the trial judge's timely actions. Accordingly, the denial of the appellant's motion for a mistrial was proper.

■ Before we review the relevant portions of the trial transcript where the alleged improprieties are said to have occurred, it is imperative that we discuss the standard to be employed by the judiciary in examining witnesses. The case from which all of our decisions in this area emanate is *Commonwealth v. Myma*, 278 Pa. 505, 123 A. 486 (1924). There Mr. Justice Kephart, later Mr. Chief Justice Kephart, writing for the majority stated:

> Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. It is better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court; but where an important fact is indefinite or a disputed point needs to be clarified, the court may see that it is done by taking part in the examination.... Judges should refrain from extended examination of witnesses; they should not, during the trial, indicate an opinion on the merits, a doubt as to the witnesses' credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all these matters are for them.

*Id.*, 278 Pa. at 508, 123 A. at 487.

That does not mean that a trial judge must sit idly by, a mere evidential technician, silenced in the face of the impossible, absurd, ambiguous or the frivolous. Nor should he leave unasked or unanswered questions that center the matter or amplify relevant testimony on the question or issue. It is a false and dangerous neutrality that would allow loss of liberty or property when another question at further inquiry would gain the fact, expose a false or improper premise, interest or bias of a witness, or correct insinuation unfounded in the record. It is not partisan to maintain the wheel, steering evenly, between competing and often aggressive counsel, anxious to set the course. Nor should a judge yield the gavel to zealous partisans or allow counsel to impose their contentions by contumelious conduct. When others than the trial judge control the proceedings, one side has lost their day in court.

In the instant case the appellant was charged with selling a quantity of cocaine to an informant and then later to the same informant and a Pennsylvania State Trooper acting under cover. At trial he raised the defenses of entrapment and duress.

Specifically he asserts that he was threatened by the informant and that his home, business and vehicles were broken into by an individual believed to be the undercover State Trooper. It was when the appellant and his wife testified, in an attempt to link the break-ins to the trooper and to thus establish duress in effectuating the sale, that most of the questioning from the bench occurred. Most representative was the following:

THE COURT: Are you telling this jury you sold Trooper Gomez cocaine, a quarter ounce, for $600.00 because you were afraid he'd break into your truck? Is that what you're saying to this jury?

APPELLANT: Sir, I'm not saying that but—

THE COURT: What is it you're saying to them?

APPELLANT: It's my belief that all of this pressure and all of this stuff amounted to me to continue to giving the last sale of this guy.

THE COURT: To do what?

APPELLANT: All this pressure that was put to me, I began putting things in my mind, and I sincerely believed that it had something to do with it, you know.

THE COURT: With what?

APPELLANT: Como, Gomez. I won't say Mr. Gomez. Como, whoever did it. But it had to be some of his people that I already knew that I had met like Como and Gomez. Ever since I met Como, it's very coincidental or blundering idiot or stupid idiot not understanding where it's coming from. I been 25 years in this country. Nothing like this happened to me. (N.T. p. 368).

When the appellant's wife took the witness stand a similar exchange took place.

THE COURT: What are you trying to get across?

THE WITNESS: What I'm say it—

THE COURT: You're suggesting that the state policeman burglarized your house or broke into it, are you not?

THE WITNESS: I'm not saying that, your Honor.

THE COURT: What are you saying?

THE WITNESS: What I'm saying is, I know somebody was in the house.

THE COURT: And it might have been Trooper Gomez?

THE WITNESS: What I'm saying is, he—maybe I better hadn't say that.

THE COURT: Say whatever you feel like saying. You want the jury to infer, do you not, that Trooper Gomez broke into your house; isn't that what you're telling them?

THE WITNESS: I'm not saying—

THE COURT: Oh, be candid with us. Come on. Isn't that why you're here on the witness stand? You want the jury to infer that Trooper Gomez, who you say was slouched down as a passenger in a car, ultimately broke into your house? Isn't that what you want this jury to infer from your testimony? Yes or not? (N.T. p. 450).

Similar exchanges occurred when the appellant expressed a desire to "speak freely" to the jurors, which request was denied, and when the appellant hesitated in stating that the delivered substance was cocaine, after he previously testified to the effect that it was cocaine he in fact sold.

It is plain to see that the appellant intended to insinuate something he was unwilling or unable to say directly. The trial judge's questions solicited, to the appellant's benefit, what in fact he would not say because he could not, by direct evidence, support his contention. It may be under all the evidence, the hope it would be believed that he sold cocaine because the trooper conducted a reign of terror against him, was slim at best. Nonetheless, the judge's questions posited his defense in the light the appellant obviously hoped and intended. The trial judge cannot be faulted if it was not believed.

■   Here the questions from the bench served no other purpose than to attempt to make the testimony conform to the defenses raised in order that the jury might more readily comprehend the basis of those defenses and how the testimony supported those defenses.  We take notice of the fact that the trial judge thoroughly instructed the jury before trial that: "I myself, although it's rare, may question one or more of the witnesses.  If I do, such questions under no circumstances will reflect any opinion on my part about the testimony of that witness, about the credibility of that witness, or about the case itself" (N.T. p. 130 April 14, 1986).  Similarly, in his charge to the jury, the trial judge stated: "You must, therefore ignore any opinion you might think the attorneys or I have expressed about the guilt or innocence of the defendant, the credibility of any or all of the witnesses, the weight of the evidence, the facts proven by that evidence, and, of course, any inference to be drawn from those facts."  (N.T. p. 511).  These instructions served to stress to the jurors that it was their opinion and their opinion alone that mattered.  That they resolved the credibility of the appellant's theories of defense against him was not the result of questioning from the bench but rather due to the fact that the evidence against this appellant was both overwhelming and credible.[4]

Having determined that the appellant's underlying claim is without merit, his allegation of ineffective assistance of counsel has been rendered moot.  *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1986).

Accordingly the judgment of sentence is affirmed.

NIX, C.J., and ZAPPALA, J., dissent.

---

**4.**  Appellant also argues that the trial court committed reversible error when it interrupted trial counsel's closing argument to the jury. During closing argument trial counsel stated to the effect that he accepted the testimony of the appellant's wife.  At which point the trial judge said, "You accept what she says, Mr. Lachall?"  Counsel then replied, "I take that back, Your Honor.  I suggest to you [the jury] you should accept what she says."  (N.T., Trial, at 481–482).  As the jury rather than counsel is entrusted with the task of evaluating the credibility of witnesses, the trial judge's interjection was entirely proper and necessary.