661 A.2d 1388

**COMMONWEALTH of Pennsylvania**

v.

**Ruben GARCIA, Appellant.**

Superior Court of Pennsylvania.

Argued April 4, 1995.

Filed July 13, 1995.

416

Joseph P. Burt, Erie, for appellant.

Kenneth A. Zak, Asst. Dist. Atty., Erie, for Commonwealth, appellee.

Before POPOVICH, FORD ELLIOTT and BROSKY, JJ.

BROSKY, Judge:

This is an appeal from the judgment of sentence entered following appellant's convictions for possession of cocaine, a schedule II controlled substance,[1] and possession of this drug with the intent to deliver.[2]

Appellant presents the following issues for our review: (1) whether the suppression court erred in refusing to suppress the evidence; (2) whether the trial judge erred by questioning a surrebuttal witness; (3) whether the trial judge erred in limiting defense counsel's closing argument to a period of twenty minutes; (4) whether the prosecutor's references to appellant's need for an interpreter constituted misconduct which necessitates the grant of a new trial; (5) whether the trial judge's actions relating to trial counsel's contumacious behavior deprived appellant of his right to a fair trial; and (6) whether trial counsel's contemptuous conduct constituted ineffective assistance of counsel. For the reasons set forth below, we affirm.

Before addressing appellant's claims, it is necessary to recount the pertinent facts giving rise to this appeal. During the early morning hours of November 10, 1992, Detective Steven Goodzich of the Erie Police Department received information from two confidential informants that appellant, Ruben Garcia, had cocaine in his car and on his person.[3] Detective Goodzich further learned that appellant was accompanied by

1. 35 P.S. § 780–113(a)(16) (defining the crime of possession); 35 P.S. § 780–104(2)(i)4 (classifying cocaine as a Schedule II controlled substance).

2. 35 P.S. § 780–113(a)(30).

3. The confidential informants were later identified as Carrie Ferraro and her boyfriend, Pat Voorhis. Although both informants contacted Detective Goodzich, Mr. Voorhis' information came from Ms. Ferraro, who had actually observed appellant in possession of the drugs. Detective Goodzich initially became acquainted with Mr. Voorhis when he was arrested on a drug-related interdiction. In exchange for Mr. Voorhis' cooperation, Detective Goodzich ultimately withdrew the various charges against Mr. Voorhis. Detective Goodzich later met/spoke with Ms. Ferraro during his dealings with Mr. Voorhis.

Carrie Ferraro, and that they were in a bar/restaurant known as Luigi's Tavern. Detective Goodzich was also informed that appellant's white Cadillac, in which the cocaine was stored, was parked nearby. Detective Goodzich relayed this information to Officer Terry Dawley who was on duty with his canine partner, Cujo, at the time.

Officer Dawley, who was previously acquainted with both appellant and Ms. Ferraro, proceeded to Luigi's Tavern where he observed appellant's car parked across from the bar. Shortly thereafter, he saw the pair exit the tavern and enter appellant's vehicle. Appellant left the area and drove eastward; Officer Dawley followed. While driving, the officer observed appellant repeatedly looking in his rearview mirror and leaning over towards the passenger side of the car. As a result of this suspicious conduct, Officer Dawley signaled to appellant to pull his vehicle over.

Appellant complied and in response to Officer Dawley's instructions, exited the car and stood by the trunk. Officer Dawley told appellant that he was suspected to be in possession of drugs; the officer then asked appellant if he would permit the car to be searched. Appellant consented and told the officer to "go ahead." Before Officer Dawley could perform the search, however, he noticed that appellant had his hands in his pockets. Concerned for his own safety, the officer thrice asked appellant to remove his hands. Appellant simply looked at the officer, said nothing and steadfastly refused to remove his hands so that they were visible. In view of appellant's behavior, the officer believed that appellant was in possession of a weapon and removed appellant's hands from his pockets. The officer then reached into appellant's pocket and removed its contents. Although no weapons were discovered, Officer Dawley found a plastic bag containing eleven smaller plastic packets which were later confirmed to contain cocaine. Appellant was then placed under arrest.

While Officer Dawley was talking with appellant, two other Erie Police officers arrived to assist. They parked nearby and

noticed Ms. Ferraro moving nervously in the front seat of appellant's car. The officers, again acting out of concern for their own safety, asked Ms. Ferraro to exit the vehicle. Ms. Ferraro complied. After a pat-down frisk disclosed that Ms. Ferraro had no weapons, the officers looked inside the car and noticed a clear plastic baggie containing a white substance, which was later determined to be cocaine, lying on the floor near the passenger seat. The officers then apprised Officer Dawley of their discovery.

At this point, Officer Dawley decided to conduct a sniff-search of the vehicle to determine whether any additional quantities of cocaine was present. Accordingly, Rudy, a trained drug-dog, was brought to the scene and exposed to the vehicle. Rudy exhibited a positive response in the hood area of the car, thus signifying that drugs were located therein. Consequently, the vehicle was impounded and towed to police headquarters. Based on the above information, Officer Dawley obtained a warrant to search the car. The search yielded an additional packet of cocaine which had been secreted in the engine compartment near the battery.[4] As a result, appellant was charged with various offenses arising out of this incident.

Appellant filed a motion to suppress the physical evidence seized from his person and vehicle.[5] The motion was denied and appellant was convicted of the above crimes following a jury trial held in June of 1993.[6] Appellant timely filed post-trial motions which were denied. On July 19, 1993, appellant was sentenced to a term of five (5) to ten (10) years imprison-

---

4. A total amount of 10.22 grams of cocaine was seized from the car and appellant's person.

5. This motion was heard and decided by Judge Connelly.

6. Judge Bozza presided over the trial, post-trial and sentencing proceedings.

ment.[7] Appellant then timely appealed therefrom.[8]

 Appellant initially challenges the lower court's refusal to suppress the physical evidence. Before we can address this issue, we must first ascertain whether it has been sufficiently preserved for review.[9] "It is well-established that issues not raised in post-trial motions are not preserved for appellate review. This rule applies even where the issue was properly presented in a pre-trial motion." *Commonwealth v. Metz*, 534 Pa. 341, 345, 633 A.2d 125, 127 (1993). *See also* Pa.R.Crim.P., Rule 1123, 42 Pa.C.S.A. and comment thereto (only those issues included in written post-verdict motions are considered preserved for appellate review). However, an exception to this rule exists in certain limited circumstances where the defendant raises the issue post-trial in a procedurally defective manner and the trial court chooses to overlook the defect and address the issue on its merits. *Commonwealth v. Metz, supra.* The requisite limited circumstances are not present here.

7. Appellant was represented during the pretrial and suppression proceedings by Dennis Williams, Esq. Appellant was represented at trial, post-trial and the sentencing by A.J. Adams, Esq., a public defender. For clarity and ease of discussion, we will refer to Mr. Adams as trial counsel. Due to his behavior at the trial, Attorney Adams was convicted of criminal contempt. This court affirmed Mr. Adams' conviction; further review was denied. *In re: A.J. Adams*, 435 Pa.Super. 202, 645 A.2d 269, *allocatur denied*, 539 Pa. 686, 653 A.2d 1225 (1994).

8. Appellant is represented on appeal by Joseph Burt, Esq., another member of the public defender's office. Attorney Burt filed a motion to withdraw due to the relationship between counsel and the challenges to prior counsel's representation. This court denied the motion.

9. Post-sentencing motions are now optional under the amended Rules of Criminal Procedure; issues are therefore preserved for appeal regardless of whether they are included in the post-sentencing motion. Pa.R.Crim., Rule 1410.B, 42 Pa.C.S.A. and Comment thereto (present rule). However, the amendments only apply to those cases in which the determination of guilt occurs on or after January 1, 1994. *Id.*, Note (present rule). Because appellant was convicted prior to this date, the amended rule is inapplicable. We must accordingly determine whether appellant's claims have been preserved pursuant to the prior pertinent caselaw and rules. Consideration thereof discloses that except for his first allegation of error, which is more fully discussed *infra*, appellant's other claims were raised in his post-trial motions.

Appellant did not contend that the lower court had erred in denying his suppression motion in his timely filed post-trial motions. Nor did appellant attempt to raise the issue in supplemental post-trial motions. Rather, this issue was not expressly presented to the trial court until it was raised in appellant's statement of matters complained of on appeal. Judge Bozza did not discuss appellant's procedurally defective method of presenting this issue. Opinion of Judge Bozza, filed 8/24/94, at 1–2. Nor did the trial judge appear to have directly considered its merits. He instead noted that the suppression motion had been heard and decided by Judge Connelly, and that Judge Connelly's opinion and order were attached to Judge Bozza's discussion and made a part thereof.[10] *Id.*

The above review demonstrates that appellant did not raise the suppression issue at any time during the post-trial motion stage of the proceedings. Nor did appellant file or request permission to file supplemental post-trial motions for the purpose of raising this claim. Although appellant included this issue in his Rule 1925(b) statement, the trial court neither addressed this procedural defect nor expressly discussed the merits of the issue. Under these circumstances, appellant's challenge to the suppression ruling must be deemed waived.[11] *Commonwealth v. Metz,* 534 Pa. at 345–346,

10. The judge's comments suggest that he did not address the merits of the issue but merely referenced Judge Connelly's disposition for the purpose of satisfying Pa.R.A.P., Rule 1925(a), 42 Pa.C.S.A., which requires that the judge who entered the order appealed from must file at least a brief statement of the reasons for the order, or for the rulings or other matters complained of, or shall specify in writing the place in the record where such reasons may be found.

11. Even if we were to consider this issue, appellant would not be entitled to any relief. The police had a reasonable suspicion that appellant was engaged in criminal activity based on their existing knowledge of appellant's drug trafficking, the information supplied by the confidential informants, as well as appellant's behavior in furtively looking into his rearview mirror, leaning toward the passenger side of the car and refusing to remove his hands from his pockets despite being thrice requested to do so by the officer. Based on this information, the police were certainly justified in stopping appellant for investigative purposes. *In the Interest of S.J.,* 425 Pa.Super. 270, 276–277, 624 A.2d 1068, 1070–1071 (1993) (effective crime prevention and detection allow

633 A.2d at 127 (defendant waived issue on appeal where he did not raise it at all at the post-trial stage, not even in a procedurally defective manner, and the trial court did not explicitly choose to overlook the omission and address the issue on its merits). *Compare Commonwealth v. Sheaff,* 518 Pa. 655, 544 A.2d 1342 (1988) *(per curiam* order), *construed in Commonwealth v. Metz, supra* (issue was not waived where it

the police to approach a person for the purpose of investigating possible criminal behavior; the police, acting on an anonymous informant's tip, had reasonable suspicion to stop the defendant and detain her for questioning). Officer Dawley was likewise permitted to conduct a pat-down search of appellant in light of his suspicious conduct in refusing to remove his hands from his pockets. *Compare S.J.* (frisk and search was unreasonable absent observation of other unusual or suspicious behavior which would lead the officer to conclude that the suspect was armed). As conceded by appellee, Officer Dawley did not merely frisk appellant but reached into his pocket and retrieved a plastic packet of drugs therefrom. Although the removal of the cocaine from appellant's pocket was unlawful, *see id.,* suppression of the evidence is not required. While Officer Dawley spoke with appellant, the other assisting officers asked Ms. Ferraro to exit the car based on her own unusual behavior and movements; this action was proper. *Commonwealth v. Morris,* 422 Pa.Super. 343, 349–351, 619 A.2d 709, 712–713 (1992), *allocatur denied,* 534 Pa. 654, 627 A.2d 731 (1993) (officer was justified in ordering passenger to exit vehicle and conducting a pat-down search based on his observation of the passenger's furtive movements in attempting to conceal a bag under the seat). After Ms. Ferraro got out of the car, the officers saw a clear plastic bag of a substance, suspected to be cocaine, lying in plain view on the floor. Observation of the drugs, coupled with the subsequent discovery of additional quantities of cocaine upon execution of the search warrant, clearly provided sufficient probable cause to lawfully arrest appellant. *Id.,* 422 Pa.Super. at 350–351, 619 A.2d at 713 (passenger was lawfully arrested after he was properly asked to exit the car and vials of crack-cocaine were seen in plain view); *Commonwealth v. Williams,* 419 Pa.Super. 380, 385–386, 615 A.2d 416, 419 (1992), *allocatur denied,* 533 Pa. 651, 624 A.2d 110 (1993) (defendant was lawfully arrested where police detected an odor of marijuana and observed a marijuana cigarette butt in plain view). The drugs found on appellant's person thus would have been inevitably discovered since the police would have been lawfully permitted to search appellant incident to his arrest. *Commonwealth v. Brundidge,* 533 Pa. 167, 174–177, 620 A.2d 1115, 1119–1120 (1993) (suppression of improperly seized evidence is not required where it is established that the evidence would have been inevitably discovered through an independent source); *Commonwealth v. Williams, supra* (police officer may conduct a warrantless search of the arrestee's person incident to a lawful arrest). Suppression of the evidence would therefore have been improper in this instance.

was presented in supplemental post-trial motions filed without leave but the trial court addressed it on its merits).

■ In his second allegation of error, appellant argues that the trial judge erred by questioning a surrebuttal witness regarding a possible violation of the trial court's previous "gag-order" which precluded the disclosure of any information pertaining to the confidential informants' identities and testimony. With regard to this issue, this court has observed:

A new trial is required only when the trial court's questioning is prejudicial, that is when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial. It is always the right and sometimes the duty of the trial judge to interrogate witnesses. However, questioning from the bench should not show bias or feeling or be unduly protracted.

*Commonwealth v. Ables*, 404 Pa.Super. 169, 184, 590 A.2d 334, 341 (1991), *allocatur denied*, 528 Pa. 620, 597 A.2d 1150 (1991) (citations omitted). *Accord Commonwealth v. Roldan*, 524 Pa. 366, 369, 572 A.2d 1214, 1215 (1990). We will examine the trial court's conduct with these considerations in mind.

The trial transcript revealed that Detective Goodzich and Ms. Ferraro were called as rebuttal witnesses. Prior to Detective Goodzich testifying, however, the trial court closed the courtroom to the public. N.T., 6/16/93, at 160–161. The trial judge further admonished the jury, counsel, appellant and everyone else in the courtroom that the names of the informants, their testimony and their role in this case was not to be divulged. *Id.* at 156–157 and 189–190. To rebut the testimony proffered by Detective Goodzich and Ms. Ferraro, appellant presented the testimony of Mary McNaughton and other witnesses. During her cross-examination by the prosecution, Ms. McNaughton was asked whether she knew why she was re-called to testify and whether she was informed that Ms. Ferraro had testified.[12] N.T. 6/17/93 at 31. Ms. McNaughton

12. Ms. McNaughton was previously called to testify during the presentation of appellant's defense.

responded that she knew that Ms. Ferraro had testified because she had been present in court, albeit outside of the courtroom. *Id.* Ms. McNaughton was also asked whether she had learned from any source exactly what Ms. Ferraro had said. *Id.* at 31. Ms. McNaughton's answer was somewhat ambiguous in that she stated "not really" and only further denied knowing the substance of Ms. Ferraro's testimony after additional questioning. *Id.* at 31–32. Upon the completion of Ms. McNaughton's examination by both counsel, the following exchange occurred:

THE COURT: Hold on just a minute, ma'am. Did you say you were outside the courtroom yesterday?

THE WITNESS: Yes, I was.

THE COURT: During the time that Carrie Ferraro was testifying?

THE WITNESS: Yes, I was.

THE COURT: Did you hear her testimony when you were sitting outside?

THE WITNESS: No.

THE COURT: Thank you. You may step down.

*Id.* at 33–34.

The trial judge's interrogation discloses that he merely attempted to clarify whether Ms. McNaughton had learned of the substance of Ms. Ferraro's testimony in violation of his prior ruling. The examination was not protracted and was conducted in an unbiased and non-prejudicial manner. Moreover, the questioning redounded to appellant's benefit by strengthening the witness' credibility. The prosecutor's cross-examination attempted to elicit an admission from Ms. McNaughton that she had learned of the substance of Ms. Ferraro's testimony and had tailored her own testimony accordingly. However, the trial court's examination made it clear that Ms. McNaughton had not heard Ms. Ferraro's testimony and thus dispelled any negative inferences sought to be raised by the prosecutor. When viewed in this context, we do not believe that the trial judge's concise questioning was so prejudicial as to mandate the award of a new trial. *See*

*Commonwealth v. Roldan,* 524 Pa. at 371–372, 572 A.2d at 1216 (trial judge's interrogation was not prejudicial where it benefitted the defendant and clarified the essence of the testimony by directly stating what the witnesses had been unwilling/unable to say); *Commonwealth v. Ables,* 404 Pa.Super. at 184–185, 590 A.2d at 341 (examination of defendant's expert witness was not prejudicial as it merely clarified the testimony).

▪▪▪ Appellant next asserts that the trial judge erred by imposing a twenty minute time limit on defense counsel's closing arguments. The length of closing argument is a matter which is entirely within the discretion of the trial judge. *Commonwealth v. Buccieri,* 153 Pa. 535, 551, 26 A. 228, 234 (1893); *Baxter v. City of Philadelphia,* 426 Pa. 240, 254, 231 A.2d 151, 159 (1967), *appeal dismissed,* 389 U.S. 573, 88 S.Ct. 695, 19 L.Ed.2d 784 (1968). *See also Commonwealth v. Morris,* 320 Pa.Super. 139, 149, 466 A.2d 1356, 1361 (1983) (it is the trial court's responsibility to insure that final argument to the jury is kept within proper accepted bounds).

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden.... [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or [the judgment is] the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*Paden v. Baker Concrete Construction, Inc.,* 540 Pa. 409, ——, 658 A.2d 341, 343 (1995) (citations and quotation marks omit-

ted). Review of the trial court's decision in accordance with these principles discloses that no abuse of discretion occurred here.

The facts of this case were not unduly complicated. There was no dispute that the cocaine was found on appellant's person and in his car. Thus, the only question to be resolved by the jury was whether appellant possessed the cocaine knowingly/intentionally or whether the drugs were planted by Ms. Ferraro and/or Mr. Voorhis for the purpose of furthering his cooperation with the police in exchange for the dismissal of the charges pending against Mr. Voorhis. Moreover, the trial judge imposed the same time limitation on the Commonwealth. We further observe that defense counsel was an experienced trial attorney who was able to fully, adequately and cogently summarize his position and the pertinent evidence within the allotted time period. *See* N.T. 6/17/93 at 46–66. In fact, the trial court permitted defense counsel to speak well in excess of the time limits. *See* Opinion of Judge Bozza, filed 8/24/94, at 4 (indicating that counsel spoke for an additional ten minutes). Under these circumstances, the trial judge's decision to limit the length of closing argument did not constitute an abuse of discretion as defined in *Paden.*

Appellant claims in his fourth issue that the prosecutor's repeated references to appellant's need for an interpreter constituted misconduct which requires the grant of a new trial. Appellant has not appropriately developed this claim in the argument portion of his brief, as the rationale supplied to this court consists solely of a single conclusory sentence. However, appellant has failed to explain the manner in which the prosecutor's actions were improper and why the award of a new trial is the appropriate remedy for the alleged misconduct. Appellant also has neither referred us to any relevant authority in support of his position nor indicated the places in the record where the challenged remarks can be found, in contravention of Pa.R.A.P., Rule 2119(b), (c) and (d), 42 Pa.C.S.A. Because appellant has failed to support this

428

claim with proper argument, we deem it to be waived.[13] *Commonwealth v. Gooding,* 437 Pa.Super. 193, 200–201, 649 A.2d 722, 725–726 (1994); *Commonwealth v. Rodgers,* 413 Pa.Super. 498, 520, 605 A.2d 1228, 1239, *allocatur denied,* 532 Pa. 655, 615 A.2d 1311 (1992) (issues were deemed waived by this court where they were not developed or supported with appropriate argument).

**13.** Even were we to address this issue, it is plain that no relief would be due. The record contains three instances in which the prosecutor briefly questioned appellant and two other witnesses regarding appellant's ability to converse in and comprehend English. N.T., 6/16/93 at 100; N.T. 6/17/93 at 6 and 37. The prosecutor's examination does not suggest an attempt to ridicule appellant merely because he used an interpreter. Instead, the questions sought to attack appellant's credibility by implying that appellant did not need an interpreter since he was able to adequately communicate with the police and others on prior occasions. Appellee's Brief at 14. Matters pertaining to credibility are certainly appropriate subjects for cross-examination. Assuming, *arguendo,* that the prosecutor's examination on this subject was inappropriate, a new trial is not required. A prosecutor's improper examination or comments require reversal only when they create a fixed bias or hostility toward the defendant such that the jury could not objectively weigh the evidence and render a true verdict. *Commonwealth v. Ford,* 539 Pa. 85, 105, 650 A.2d 433, 442 (1994); *Commonwealth v. Edmiston,* 535 Pa. 210, 232, 634 A.2d 1078, 1089 (1993). The questions here were not of the type which would induce the jury to form a fixed bias and hostility towards appellant such that they could not objectively weigh the evidence. Moreover, the questions were isolated in nature and the significance thereof may well have escaped the jury's attention since it was neither exploited by the prosecutor nor otherwise explained in his closing statement. Appellant thus was not prejudiced by these questions.

However, an attack on a defendant's credibility based on his/her desire to testify through an interpreter should not be the preferred mode of impeachment, as it comes perilously close to impinging upon the defendant's exercise of his/her fundamental constitutional rights. *See Commonwealth v. Pana,* 469 Pa. 43, 48–51, 364 A.2d 895, 898–899 (1976) (defendant's ability to use an interpreter encompasses numerous fundamental rights; trial court abused its discretion by refusing to permit the defendant to testify in Spanish via an interpreter and by suggesting that the defendant fabricated his language barrier where the defendant had patent difficulty understanding and speaking English). Full comprehension is critical in any legal proceeding, and perhaps even more so in a criminal matter where fundamental liberty interests are at stake. *Id.* It therefore would be neither unreasonable nor an attempt at fabrication for an individual for whom English is a second language to utilize an interpreter at trial to ensure that the questions and responses are fully understood, even though he or she would not do so for ordinary conversational purposes.

■■■■■ In his penultimate allegation of error, appellant contends that the trial court erred by limiting trial counsel's style and by reprimanding counsel for his contemptuous behavior in front of the jury. Appellant has again failed to properly support this argument with citations to pertinent authority and specific references to the record. Moreover, appellant's reasoning is deficient in that it consists of nothing more than self-serving and conclusory assertions regarding the purported hostility between the trial judge and defense counsel and its allegedly prejudicial effect on the jury. We accordingly find this issue to be waived.[14] *Commonwealth v. Gooding* and *Commonwealth v. Rodgers, supra.*

**14.** In any event, a new trial would not be warranted on this ground. As conceded by appellant, the record reflects that the trial court's discussions with counsel primarily occurred outside of the presence of the jury. N.T. 6/15/93 at 127–129; N.T. 6/16/93 at 21, 152 and 179–181; N.T. 6/17/93 at 39–41 and 107–108. The jury was informed that objections and evidentiary matters would be heard at sidebar outside of their hearing. N.T. 6/15/93 at 5–6. Thus, the mere fact that sidebar discussions occurred could not have led the jury to believe that some egregious impropriety had been committed by trial counsel. Of the few incidents which did take place before the jury, there is nothing in the record which even remotely suggests that the trial judge did or said anything to impugn trial counsel or appellant. N.T. 6/16/93 at 185–187; N.T. 6/17/93 at 54, 56, 59–60 and 63–64. *See also In re: A.J. Adams,* 435 Pa.Super. at 209, 645 A.2d at 273 (discussing the great patience which the trial judge showed to defense counsel, the fact that the judge went out of his way to caution defense counsel regarding his inappropriate behavior and that the judge recognized and respected trial counsel's skills as an attorney). In fact, the trial judge's remarks reflect only his intention to have sidebars with counsel or his issuance of instructions to the jury after ruling upon proper objections made by the district attorney. N.T. 6/16/93 at 185–187; N.T. 6/17/93 at 54, 56, 59–60 and 63–64. The trial court's rulings/instructions made during closing argument likewise were not prejudicial. The instructions were appropriate and did not indicate that trial counsel had committed any gross misconduct; rather, two of the objections and instructions could reasonably have been interpreted as being favorable to trial counsel. N.T. 6/17/93 at 54 and 64 (in response to the prosecutor's objections concerning defense counsel's recapitulation of certain evidence, the trial court merely told the prosecutor that the testimony was a matter for the jury to recall and did not admonish defense counsel or otherwise indicate that his assessment was incorrect). In addition, similar objections occurred during the prosecutor's closing argument and the trial court made it clear that its instructions applied to both the prosecutor and defense counsel. N.T. 6/17/93 at 56 and 59. The record therefore does not support appellant's characterization of the relationship be-

■ Appellant's final challenge pertains to the alleged ineffectiveness of trial counsel based on his contemptuous conduct. To be eligible for relief, appellant must demonstrate that:

> (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) counsel's ineffectiveness prejudiced him. Counsel is presumed to have acted in his client['s] best interest; thus, it is appellant's burden to prove otherwise.

*Commonwealth v. Walker,* 540 Pa. 80, ——, 656 A.2d 90, 98 (1995) (citations omitted). Appellant's arguments and trial counsel's behavior will be examined in accordance with this standard.

■ Trial counsel is expected to vigorously defend his/her client's interests. Nevertheless, zealous advocacy has its limits, as lawyers are required to act in a respectful, professional and courteous manner towards the court, opposing counsel and the witnesses. There is no question that defense counsel's conduct transgressed the bounds of propriety here. Appellant's underlying claim therefore has arguable merit. However, appellant is not entitled to any relief unless he can show that trial counsel's conduct was unreasonable and that he was prejudiced, *i.e.,* that the result in this case would have been different absent such conduct. *Commonwealth v. Walker, supra; Commonwealth v. Edmiston,* 535 Pa. at 237–238, 634 A.2d at 1092.

The record reflects that the behavior for which trial counsel was ultimately sanctioned was intentionally employed as a strategy for advancing appellant's best interests by providing the jury with a favorable opinion of appellant and a negative view of the police informants. Opinion of Judge Bozza, filed

tween defense counsel and the trial judge, or that appellant could have been prejudiced in any manner thereby. *See Commonwealth v. Davis,* 258 Pa.Super. 224, 230, 392 A.2d 766, 768 (1978) (defendant was not prejudiced by trial judge's actions where jury did not know that defense counsel was held in contempt, the heated exchange between counsel and the judge was a brief and isolated incident, and cautionary instructions were given to the jury).

8/24/94, at 6. We also observe that the jury was unaware of the fact that trial counsel had engaged in contumacious behavior because the discussions concerning his conduct and the contempt proceedings all occurred outside the presence of the jury. In addition, the evidence of appellant's guilt was overwhelming as there is no question that the drugs were found on his person and in his car, and his defense to the charges was highly incredible when considered in light of the other evidence. When viewed in this manner, it is evident that the conduct complained of inured to appellant's benefit rather than his detriment. Accordingly, we are not persuaded that relief should be granted in this instance.[15]

Judgment affirmed.

---

**15.** Our decision should not be construed as a condonation of the tactics employed by trial counsel in this case.