Shirley W. D'ORAZIO, Appellant,

v.

PARLEE & TATEM RADIOLOGIC ASSOCIATES, LTD., Henry Randolph Tatem, III, M.D., Amy B. Whitley, M.D., Doylestown Hospital and Women's Diagnostic Center of Doylestown Hospital, Frankford Hospital–Torresdale Division, Bruce Jay Lehrman, M.D., and Robert Bronstein, M.D., Appellees.

Superior Court of Pennsylvania.

Argued Feb. 4, 2004.

Filed May 13, 2004.

Lawrence D. Finney, Philadelphia, for appellant.

Kim R. Plouffe, Philadelphia, for Bronstein, appellee.

Mary E. Dixon, Philadelphia, for Whitley, appellee.

Deborah M. Knight, Philadelphia, for Frankford, appellee.

Charles W. Craven, Philadelphia, for Doylestown, appellee.

Before: KLEIN, McCAFFERY and OLSZEWSKI, JJ.

OPINION BY KLEIN, J.:

¶ 1 Shirley W. D'Orazio appeals from the judgment entered on a defense verdict finding that her physicians did not miss "suspicious findings" on a series of mammograms and therefore were not negligent. She claims the trial court erred in: (1) failing to give requested jury charges on the doctrine of "error in judgment" and its exceptions and (2) allocating more total time to the defendants for closing arguments than to her. We affirm.

¶ 2 The defendant radiologists reviewed mammograms of D'Orazio's breasts in 1988, 1990, 1994, 1995, 1997, and 1998. In 1998, D'Orazio was informed that her most recent mammogram showed signs of a malignancy. She was diagnosed with breast cancer that same year and had a left modified radical mastectomy. After the surgery, she underwent extensive chemotherapy and a stem cell transplant. In February 2000, D'Orazio sued her radiologists, claiming they misinterpreted her pre–1998 mammograms and were negligent in failing to perform further diagnostic tests, such as spot compression views and ultrasounds, to explore changes in her breasts.

¶ 3 Despite the eight days of trial and voluminous briefs and appendices on appeal, this is a fairly typical medical malpractice case where there was a battle of experts at trial and the defense won. D'Orazio's expert opined that the changes apparent on the mammograms taken in 1988, 1990, 1994, 1995, and 1997 were suspicious and that it was beneath the standard of care for her physicians to merely conduct further routine mammograms rather than follow-up tests. The defense experts countered that: (1) while there were some changes over time on the mammograms, they were minor and expected because D'Orazio was taking hormone replacement drugs; and (2) it was within the standard of care for the physicians to not order further tests and just ask D'Orazio to come back for routine mammograms. The jury believed the defense experts and found the defendants were not negligent. D'Orazio's post-trial motion was denied.

1. **The trial judge correctly refused to charge the jury on "error in judgment."**

¶ 4 The experienced, well-regarded trial judge, Sheldon C. Jelin, summarized his reasons for failing to give D'Orazio's re-

quested points for charge 13, 14, and 15 regarding "error in judgment":[1]

> All three charges are qualifying charges to the charges submitted by Defendants referring to physicians not being held liable for errors in judgment. This court ... did not instruct the jury regarding a physician's liability for errors in judgment. This was not an error in judgment case.
>
> This Court found that the charges submitted by Plaintiff ... would ultimately confuse and mislead the jury.

(Trial Court Opinion, 9/23/03, at 2.)

¶ 5 We completely agree. In her brief, D'Orazio claims that "no Pennsylvania case states that the principles of law described in Points 13, 14 and 15 are *only appropriate* for jury consideration when a trial court provides an 'error of judgment' charge." (Appellant's Brief at 18 (emphasis in original).) Perhaps not, but we do so today.

¶ 6 We agree with D'Orazio when she says, "In charging the jury, the trial judge's duty is to state accurately the applicable principles of law *in plain language*, and to assist the jury in applying the evidence to those principles." (Appellant's Brief at 13 (citing *Pia v. Perrotti*, 718 A.2d 321, 324 (Pa.Super.1998)) (emphasis supplied).)

¶ 7 D'Orazio's suggested language, which is based on *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1963), is far from a shining example of clarity that can be easily understood by jurors. Just because an appellate court uses certain language in an opinion does not necessarily mean it is appropriate for a lay juror. When a charge is sustained by an appellate court, that does not mean the appellate court advocates its usage as the best way to convey the thought to lay jurors. It simply means the charge sufficiently stated the law such that it does not warrant reversal.

¶ 8 Since at least 1981, there has been no reference to the error in judgment exception in the standard civil jury instruction on a physician's standard of care. *See* Pa. S.S.J.I. (Civ.) 10.03A (2003); Pa. S.S.J.I. (Civ.) 10.03A (1981). The note to 10.03A specifically states that "error in judgment" and its exceptions are not included in the charge because "[t]he principles contained therein are adequately covered by the charge on the professional standard of care." Pa. S.S.J.I. (Civ.) 10.03A, Subcommittee Note (2003); *see also* Pa. S.S.J.I. (Civ.) 10.03A, Subcommittee Note (1981) (same). The 2003 note further states that giving a separate

1. D'Orazio's proposed points for charge read in relevant part:

> 13. There is a vast difference between an error in judgment and negligence in the collection and securing of factual data essential to arriving at the proper conclusion or judgment. If a physician, as an aid to his diagnosis, i.e.: his judgment, does not avail himself to the scientific means and facilities open to him for the collection of the best factual data upon which to arrive at his diagnosis, the result is not an error in judgment but negligence in failing to secure an adequate factual basis upon which to support his diagnosis or judgment....
>
> 14. A physician has a duty to perform adequate and complete tests in order to secure a sufficient factual basis upon which to support a diagnosis or judgment....
>
> If you find that the defendants did not perform adequate and complete tests on plaintiff, Shirley D'Orazio, then you should find the defendants negligent....
>
> 15. If needed as an aid to his diagnosis, i.e. his judgment, a physician must utilize the available scientific means and facilities for the collection of the best factual data upon which to arrive at his diagnosis. If he does not, the result is negligence not an error of judgment....

(Plaintiff's Proposed Points for Charge 13–15 (citations omitted).)

charge on a physician's "judgment" is more likely to mislead and confuse the jury than add to its understanding. Pa. S.S.J.I. (Civ.) 10.03A, Subcommittee Note (2003). The proper focus is whether the physician's *conduct* (be it an action, a judgment, or a decision) was within the standard of care. *Id.*

¶ 9 The standard charge given by Judge Jelin accurately informed the jury of the standards to be applied in a medical malpractice case. (*See* N.T., 4/15/03, at 128–31.) While even that language could, and probably should, be simplified, it is far less confusing than first telling the jury that a doctor is not responsible for an error in judgment and then providing an exception if the judgment was below the standard of care. *See Smith, supra.* A judgment is an act of a physician like any other decision the physician makes, and, except in the rarest of cases, the "error in judgment" charge is much more likely to confuse than clarify.

¶ 10 Judge Jelin correctly spelled out the basic principles of law. It was up to counsel to apply those principles to the facts of the case, which, in fact, they adequately did in closing arguments. We find no abuse of discretion or error of law.[2]

**2. The trial judge's allocation of time among counsel for closing arguments was proper.**

¶ 11 Judge Jelin was concerned because the case took much longer than counsel had predicted and some of the jurors might have had problems completing their service. (N.T., 4/15/03, at 27–32.) Therefore, he thought it appropriate to restrict the length of closing arguments. Consid-

ering that counsel had already taken much more time than expected for the case, Judge Jelin had reason to believe they might similarly take a great deal of time in closing.

¶ 12 Before closings, Judge Jelin had allocated 25 minutes to the plaintiff, plus five minutes for rebuttal, and 20 minutes to each of the three defendants. He actually allowed the plaintiff 36 minutes to close while the defendants took a total of one hour and eleven minutes.

 ¶ 13 It is within the trial judge's discretion how much time to allow for closing arguments. *See* Pa.R.C.P. 223; Phila.Civ.R. *223.1(b); *Commonwealth v. Garcia*, 443 Pa.Super. 414, 661 A.2d 1388, 1394 (1995). Judge Jelin clearly explained to counsel how much time he was allotting to each party and why. (*See* N.T., 4/15/03, at 27–32.) While different judges might allocate different amounts of time for closings, we will not second-guess the reasonable determination of the trial judge, who heard the trial and saw the lawyers in action when making his decision. Generally trial judges do the parties and their lawyers a favor when they limit closing arguments, because after a long trial the jurors' attention is somewhat limited and normally a shorter closing is more effective. In a case that everyone thought should take *fewer* than eight days, the plaintiff was not prejudiced by having to sum up in 36 minutes. We find no abuse of discretion. *Garcia, supra.*

¶ 14 Judgment affirmed.

---

**2.** When reviewing jury instructions, we must determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. A charge will be found adequate unless the issues were not made clear to the jury, the jury was palpably misled by what the trial judge said, or there was an omission in the charge amounting to fundamental error. *Eichman v. McKeon*, 824 A.2d 305, 317 (Pa.Super.), *app. denied*, 839 A.2d 352 (Pa.2003).