J-S61044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTWAIN OLIVER, | |
| Appellant | No. 1050 WDA 2014 |

Appeal from the Judgment of Sentence April 1, 2014
in the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000666-2013

BEFORE:  FORD ELLIOTT, P.J.E., WECHT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED OCTOBER 27, 2014**

Antwain Oliver (Appellant) appeals from his April 1, 2014 aggregate judgment of sentence of 100 to 200 months of incarceration entered following his convictions for, *inter alia*, aggravated assault, simple assault, and recklessly endangering another person (REAP).[1]  We affirm.

The facts underlying Appellant's convictions were summarized by the trial court as follows.

> The incident giving rise to this case occurred during the early morning hours of March 8, 2013.  At approximately 1:50 a.m., Uniontown City Police Officer Jonathan S. Grabiak was on routine patrol on Coolspring Street near Austin Street in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(4), 2701(a)(1), and 2705, respectively.  Appellant also was convicted of several crimes related to controlled substances and firearms, but he does not challenge those convictions on appeal.

Uniontown, Fayette County, Pennsylvania. Officer Grabiak heard gunshots coming from Austin Street and immediately turned his vehicle around and drove down the street. Once there, he observed a black male wearing a gray hooded sweatshirt and green and blue plaid pants standing on the sidewalk in front of Esther's Tavern with a black semi-automatic firearm in his right hand. Officer Grabiak then observed the man place the firearm inside his pocket and go into the bar. He immediately followed him inside after radioing for backup. The .45 caliber Tulammo firearm was found lying on the floor of the bar next to the front door with one live round in the magazine. The serial number had been removed from it.

[After Officer Grabiak was informed that the man had gone into in the restroom, three additional police officers arrived at the bar.] The officers then proceeded to the restrooms and cleared them. The male [whom] Officer Grabiak observed outside of the bar was inside the restroom and identified as [Appellant]. He was immediately placed under arrest and searched incident to arrest. A baggie containing 5.3 grams of crack cocaine broken into small pieces and [$1,860.00] in cash were recovered from [Appellant's] person. The cash was separated into different folds in [Appellant's] pocket.

When the officers returned outside, they observed five (5) spent shell casings on the sidewalk that matched the firearm recovered inside the bar. [Appellant's] name was run through the Pennsylvania State Police licensing database, and it was revealed that [Appellant] did not have a valid license to carry a firearm.

As the officers were continuing their investigation around the area of the bar, Corina Lopez, her husband, Hulie White, and her sister, Jam-el Williams, went to the police station to file a report because the minivan they were in was twice hit by gunshots fired by [Appellant] outside the bar. One bullet went through the front windshield of the vehicle, while another hit the rear taillight as Ms. Lopez was expeditiously driving away from the scene. Ms. Lopez and Ms. Williams did not know [Appellant], but their description of the shooter matched what the officers had observed him wearing on the evening in question. They were also able to make a positive identification at the station after [Appellant] was brought in following his arrest.

Trial Court Opinion, 6/27/2014, at 2-4.

Appellant was charged with a plethora of crimes as a result of these events, and a jury convicted him of all counts on March 7, 2014. On April 1, 2014, Appellant was sentenced as indicated above. On April 9, 2014, Appellant filed a post-sentence motion, which the trial court denied by order of June 27, 2014. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions on appeal, which we have renumbered for ease of disposition.

[1]. [Whether] the evidence was legally and factually insufficient to show that [Appellant] committed the crimes beyond a reasonable doubt [where there was no evidence that Appellant took any action with the requisite *mens rea*].

[2]. [Whether] the evidence presented by the Commonwealth was against the weight of evidence relative to aggravated assault (3 counts) and simple assault as the Commonwealth submitted no evidence to establish knowledge or intent to injure or harm any of the occupants of the van.

[3]. Did [the trial court] err in response to the jury's question requesting a redefinition of aggravated assault and simple assault when the court provided a charge relative to [REAP] when the same was not requested by the jury?

[4]. [Whether] Appellant was prejudiced by the absence of any African American individuals in the prospective jury panel over defense counsel's objections prior to jury selection.

[5]. Did the [trial court] err in the manner it question[ed] the expert witness?

Appellant's Brief at 9-10 (subparts and unnecessary capitalization omitted).

- 3 -

We consider Appellant's first question mindful of the following.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Cahill*, 95 A.3d 298, 300 (Pa. Super. 2014) (quoting *Commonwealth v. Estepp*, 17 A.3d 939, 943–44 (Pa. Super. 2011)).

Appellant claims the evidence at trial was insufficient to sustain his convictions because the Commonwealth failed to prove that he (1) caused or attempted to cause serious bodily injury or acted with extreme indifference to the value of human life; (2) attempted to cause injury with a deadly weapon; or (3) placed anyone in danger of death or serious bodily injury by shooting a handgun in the direction of the victims. Appellant's Brief at 9.

"[A] person is guilty of [simple] assault if he: … attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another…." 18 Pa.C.S. § 2701(a)(1). "A person is guilty of aggravated assault if he: …

attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon…." 18 Pa.C.S. § 2702(a)(4). A person is guilty of REAP if he or she "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

The thrust of Appellant's argument that the Commonwealth failed to prove the intent elements of these crimes is that there was no evidence that Appellant knew or had any connection with any of the victims or that "the weapon was fired by [A]ppellant directly at them." Appellant's Brief at 20.

First, Appellant's attack on the dearth of evidence of his motive to shoot these particular victims is unavailing. The statutes, quoted above, which define simple assault, REAP, and aggravated assault do not include motive as an element. "[A]lthough motive evidence may be relevant to guilt, the Commonwealth is not required to provide such evidence in order to prove its case." *Commonwealth v. Dougherty*, 860 A.2d 31, 36 (Pa. 2004).

Second, accepting as true the testimony offered at trial, it is clear that the Commonwealth proved the necessary elements of the crimes which Appellant challenges on appeal. Jam-el White testified that she was riding in the back of a minivan driven by her sister. N.T., 3/5-7/2014, at 133. They were going to Esther's Bar to see a disc jockey (DJ) friend from New York who was working a party there. *Id.* at 134. When they arrived at Esther's,

the DJ and his crew were loading equipment into their vehicle, which was parked in front of the bar. *Id.* As the minivan approached the Jeep, Ms. White began to open the door to get out. Before she could do so, a shot was fired into the window of the minivan by Appellant, who was standing by the bar entrance wearing a gray hooded sweatshirt and blue pajama pants. *Id.* at 135-36. As the van sped away and made a right turn, Appellant shot again and hit the van's tail light. *Id.* at 143.

From this testimony alone, the jury reasonably could conclude that Appellant intended to fire his gun into an occupied vehicle. One shot that happened to hit a stationary object might require guesswork to determine whether it was fired at the object intentionally or by accident. But that there were two shots that hit the same moving target when it was at different locations on the street rationally suggests, beyond mere speculation, that they were fired with the intent to hit that target. Further, the fact that the van was being driven showed that Appellant knew that he was shooting at people when he shot at the vehicle.

Intentionally firing a gun at another person satisfied the *mens rea* elements of aggravated assault, REAP, and simple assault. *See, e.g., Commonwealth v. Galindes*, 786 A.2d 1004, 1012 (Pa. Super. 2001) (holding firing a gun at someone is conduct that is likely to result in serious bodily injury and shows intent to injure) (citing *Commonwealth v. Wanamaker*, 444 A.2d 1176, 1178 (Pa. Super. 1982); *Commonwealth v.*

***Smith***, 956 A.2d 1029, 1036 (Pa. Super. 2008) ("Reckless endangerment is a lesser included offense of aggravated assault and where the evidence is sufficient to support a claim of aggravated assault it is also sufficient to support a claim of recklessly endangering another person.") (quoting ***Commonwealth v. Thompson***, 739 A.2d 1023, 1028 n. 13 (Pa. 1999); ***Commonwealth v. Brown***, 605 A.2d 429, 432 (Pa. Super. 1992) (holding facts sufficient to support aggravated assault conviction are necessarily sufficient to sustain conviction for lesser included offense of simple assault). Accordingly, Appellant's sufficiency-of-the-evidence challenge fails.

Appellant next asserts that the verdicts were against the weight of the evidence. We consider his argument under the following standard of review.

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a palpable abuse of discretion will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

*Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (internal quotation marks and citations omitted).

Appellant's weight argument merely repeats his sufficiency argument: that the Commonwealth failed to prove that Appellant had a motive to shoot the victims or otherwise had the intent to injure them. Appellant's Brief at 13-16. The trial court rejected Appellant's argument. Trial Court Opinion, 6/27/2014, at 6. For the reasons discussed above, we discern no abuse of discretion by the trial court in refusing to hold that the verdicts were against the weight of the evidence.

With his third issue, Appellant claims that the trial court erred in its answer to a jury question. Specifically, Appellant argues that the trial court should not have not have given a supplemental instruction on REAP when the jury asked only for the definitions of simple assault and aggravated assault. Appellant's Brief at 29.

> The scope of supplemental instructions given in response to a jury's request rests within the sound discretion of the trial judge. There may be situations in which a trial judge may decline to answer questions put by the jury, but where a jury returns on its own motion indicating confusion, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion.

*Commonwealth v. Davalos*, 779 A.2d 1190, 1195 (Pa. Super. 2001) (internal citation omitted).

The full extent of Appellant's argument related to this issue[2] is that the trial court's discussion of REAP "served to totally confuse the jury relative to the *mens rea* elements of [a]ggravated and [s]imple assault...." Appellant's Brief at 32 (italics added). We disagree.

The trial court, after acknowledging that the jury did not ask about REAP, stated "I believe that it is helpful to go over that again because there is a different mental state involved" for REAP. N.T., 3/5-7/2014, at 277. It then went on to explain that recklessness involves consciously ignoring an unjustified risk of causing serious injury, and compared and contrasted recklessness with acting intentionally. *Id.* at 279. The trial court explained that, because "recklessness is a lesser mental state than intentional conduct[,]" if the jury found that Appellant acted intentionally, he is also guilty of acting recklessly; however, if Appellant was merely reckless, he did not have the specific intent to cause injury. *Id.* Rather than confuse, the jury instructions clarified the different mental states for them. We are unconvinced that the trial court abused its discretion in offering this clarification.

_____

[2] In the argument section of his brief, Appellant also complains about the substance of the trial court's instruction regarding inferences that the Commonwealth asked the jury to make regarding intent. Appellant's Brief at 32. However, this question is neither explicitly presented in Appellant's statement of questions, nor fairly suggested by the question he did state. Thus, we will not consider it. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

Appellant's fourth issue is based upon the absence of any African-American individuals in the prospective jury panel. Appellant's Brief at 33.[3] We therefore review the applicable legal principles.

"[T]he accused has no right to demand that specific minority groups or even members of his own race be included in his jury." **Commonwealth v. Sanchez**, 36 A.3d 24, 58 (Pa. 2011).

> To establish a *prima facie* violation of the requirement that a jury array fairly represent the community, Johnson must show that: (1) the group allegedly excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such people in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. "Systematic" means caused by or inherent in the system by which juries were selected.

**Commonwealth v. Johnson**, 838 A.2d 663, 682 (Pa. 2003), *cert. denied* 543 U.S. 1008 (2004) (internal quotation omitted).

Appellant acknowledges that he has no evidence African Americans are systematically excluded from the jury selection process. Appellant's Brief at 33. However, he claims that he has been denied the opportunity to challenge the selection process properly because (1) "there is no way to insure that any African-American jurors will appear if selected[,]" and (2)

---

[3] Although Appellant question references "the absence of any African American individuals in the prospective jury panel[,]" he acknowledges that there was one African-American gentleman who was stricken for cause because he was "well acquainted" with one of the defense witnesses. Appellant's Brief at 33.

"without actually seeing the citizens who appear for jury duty[,] there is no way of knowing whether or not any African-Americans have been selected[.]" **Id.** at 34.

By professing that he had no reason to believe that there would be a dearth of African-American citizens on his panel of prospective jurors prior to showing up for jury selection, Appellant admits that he has no information or belief that the jury selection process systematically excludes African-American citizens of Fayette County. Rather, it is clear that he was simply unhappy with the jury panel he received.[4]

Finally, Appellant claims that the trial court erred in its examination of the Commonwealth's forensics expert, Susan Atwood. Appellant asserts that the trial court's asking Ms. Atwood about the number of certain gunshot residue particles that were found on Appellant's hand was improper because she had previously testified that the exact number of particles was

_____

[4] Fayette County has an African-American population of close to five percent. **See** http://quickfacts.census.gov/qfd/states/42/42051.html (United States Census Bureau's report of 2013 statistics for Fayette County). Thus, a panel, and even more so, an array with only one African-American participant in it is troublesome, and we are concerned about it. Nonetheless, counsel must prove systematic exclusion, and there are ways to do so. **See, e.g., Garcia-Dorantes v. Warren**, 978 F.Supp.2d 815 (E.D.Mich. 2013) (holding systematic discrimination proven where computer program which selected jurors pulled names from only two zip codes in the county, excluding a highly-populated geographic area with a 90% African-American population).

irrelevant. Appellant's Brief at 36. Further, Appellant argues, defense counsel had not been provided with the exact number prior to trial. **Id.**

Regarding a trial judge's examination of witnesses, this Court has observed that

> [a] new trial is required only when the trial court's questioning is prejudicial, that is when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial. It is always the right and sometimes the duty of the trial judge to interrogate witnesses. However, questioning from the bench should not show bias or feeling or be unduly protracted.

**Commonwealth v. Garcia**, 661 A.2d 1388, 1393 (Pa. Super. 1995) (quoting **Commonwealth v. Ables**, 590 A.2d 334, 341 (Pa. Super. 1991)).

Here, Ms. Atwood testified, within a reasonable degree of medical certainty, that particles characteristic of gunshot residue were found on the front and back of both of Appellant's hands. N.T., 3/5-7/2014, at 175. Defense counsel, on cross examination, asked "we don't know if there was one particle or more on his right palm, back of the hand, left palm or back of the left hand?" **Id.** at 178. Ms. Atwood answered that she did note those numbers, but that the number was irrelevant as long as there is one particle. **Id.** At the conclusion of cross-examination, the trial court asked about the number of particles found, Appellant objected, a brief sidebar conference was held, and the trial court informed Ms. Atwood that she did not need to answer the question. N.T., 3/5-7/2014, at 185-186.

Appellant offers no explanation of how the asking and withdrawing of the trial court's single question "painted the actual testimony of the forensic expert in a light that pushed them toward a conviction." Appellant's Brief at 37. Nor is this an obvious, or even reasonable, inference given the testimony as a whole. His bald assertion of prejudice does not convince us that a new trial is warranted.

Because Appellant has failed to establish that any of his issues warrants relief, we have no cause to disturb his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/27/2014