J-E04003-14

2015 PA Super 138

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. :
:
JERMEEL OMAR TYSON, :
:
Appellee : No. 1292 MDA 2013

Appeal from the Order June 18, 2013,
Court of Common Pleas, Berks County,
Criminal Division at No. CP-06-CR-0005578-2012

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA,
DONOHUE, SHOGAN, MUNDY, OLSON and OTT, JJ.

DISSENTING OPINION BY DONOHUE, J.:          **FILED JUNE 10, 2015**

Because I disagree with the learned Majority's conclusion that the circumstances surrounding Tyson's prior rape conviction and the instant matter are sufficiently similar to satisfy the common plan or scheme and absence of mistake exceptions to Rule 404(b) of the Pennsylvania Rules of Evidence, I respectfully dissent.  In my view, the Majority's analysis overemphasizes the few similarities that exist between Tyson's prior rape conviction and the present matter while completely dismissing the several important differences between the two incidents.  The Majority also incorrectly resolves the issues of remoteness and undue prejudice, with its analysis on these points clearly influenced by its desire to find the evidence of Tyson's prior rape conviction admissible.  I also believe that the Majority's analysis of the Commonwealth's need to present the evidence of the prior

rape conviction misconstrues existing case law to permit prior acts evidence to bolster the credibility of the Commonwealth's only witness where there is no indication that the witness is otherwise impeachable. Based on the certified record on appeal, I would conclude that Tyson's prior rape conviction was not admissible under either the common plan or scheme or the absence of mistake exceptions to Rule 404(b).

As the Majority recognizes, Rule 404(b)(1) of the Pennsylvania Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Our Supreme Court has explained:

> The purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence[.]

***Commonwealth v. Spruill***, 391 A.2d 1048, 1049-50 (Pa. 1978) (quotations and citations omitted). Rule 404(b)(2) also provides that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). In a criminal matter, "this

evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

Recently, our Supreme Court explained the common plan or scheme exception as follows:

> Evidence of other crimes is said to be admissible [to] prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.

*Commonwealth v. Roney*, 79 A.3d 595, 606 (Pa. 2013) (quotations and citation omitted), *cert. denied*, 135 S. Ct. 56 (2014).

Under the *G.D.M., Sr.* framework quoted by the Majority, *see* Maj. Op. at 7-8, courts must examine the following: (1) whether the details and surrounding circumstances of each criminal incident reveal criminal conduct that is distinctive and so nearly identical that it represents the signature of the same perpetrator; (2) if the criminal conduct represents the signature of the same perpetrator, whether the common plan or scheme evidence is too remote in time; and (3) if the common plan or scheme evidence represents the signature of the same perpetrator and is not too remote in time, whether the probative value of the evidence is outweighed by its potential prejudicial impact. *See Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 987 (Pa. Super. 2007). My examination of the certified record in the case at bar

reveals insufficient similarities between the two criminal incidents to permit the admission of the evidence of the earlier conviction, as there is inadequate evidence to conclude that the methods employed by Tyson were "distinctive and so nearly identical as to become the signature of the same perpetrator." *See id.*

The Majority relies on the following facts in concluding that this case falls within the common plan or scheme exception to Rule 404(b):

> In each case, [Tyson] was acquainted with the victim—a black female in her twenties—and he was an invited guest in the victim's home. [Tyson] was aware that each victim was in a weakened or compromised state. Each victim ultimately lost consciousness. In each case, the victim awoke in her bedroom in the early morning hours to find [Tyson] having vaginal intercourse with her.

Maj. Op. at 11.

In my opinion, the Majority strips the details of the facts from the incidents in order to incorrectly conclude that these simplified likenesses make Tyson's prior rape conviction sufficiently similar to the instant matter, warranting the admission of Tyson's prior crime under the common plan or scheme exception. Further analysis of the two incidents reveals several important dissimilarities. For example, the record reflects that the context in which Tyson was in T.B.'s home and G.B.'s home was entirely different. For his prior rape conviction, T.B.'s brother invited Tyson into their home for a party. *See* N.T., 6/6/13, Exhibit C-1 at 3. Here, G.B. herself invited Tyson

into her home because she was feeling ill. Commonwealth's Motion In Limine to Introduce Evidence of Defendant's Prior Crime (hereinafter "Commonwealth's Motion In Limine"), 5/31/13, ¶¶ 3-4. G.B. also asked Tyson to bring her food. *Id.* ¶ 4. Because G.B. and Tyson were friends with each other, and because he stayed at her home late into the night, it logically follows that some form of direct social interaction occurred between the two throughout the evening. This differs greatly from the absence of social interaction that took place between Tyson and T.B. before the events that led to Tyson's prior rape conviction because he was at T.B.'s home partying and drinking as a friend of T.B.'s brother along with several other individuals. *See* N.T., 6/6/13, Exhibit C-1 at 3-4.

The Majority relies heavily on the fact that during each event, Tyson allegedly had sexual intercourse with T.B. and G.B. while each was sleeping. *See* Maj. Op. at 11-12. My review of the record, however, once again reveals important differences. For his prior rape conviction, there was no dispute that T.B. was sleeping when Tyson began having sexual intercourse with her. *See* N.T., 6/6/13, Exhibit C-1 at 3. For the instant crime, Tyson disputes G.B.'s claims that she was sleeping when he began having sexual intercourse with her. *See* Commonwealth's Motion In Limine, 5/31/13, ¶ 10. In fact, G.B. herself stated that the second time she awoke to find Tyson having sexual intercourse with her, she asked him what he was doing

and he responded: "What do you mean? Your eyes were open the whole time." *Id.*

When examined closely, other similarities relied upon by the Majority to support the admissibility of the prior conviction are likewise unremarkable and not indicative of a signature crime. The Majority points out that Tyson was previously acquainted with both T.B. and G.B. *See* Maj. Op. at 11. As previously noted, the record reflects that the two relationships clearly differed. Tyson was an acquaintance of T.B. because he was friends with her brother, while Tyson and G.B. were friends with each other. Similarly, while the Majority is correct that Tyson was in both T.B.'s home and G.B.'s home into the early morning hours, *see id.*, the reasons for this differ markedly, as Tyson was at T.B.'s home for her brother's party, but was an invited guest in G.B.'s home because she invited him to be there. *See* N.T., 6/6/13, Exhibit C-1 at 3-4; Commonwealth's Motion In Limine, 5/31/13, ¶¶ 3-4. Additionally, I find it unremarkable that both events occurred in T.B.'s and G.B.'s bedrooms – another similarity relied upon by the Majority. *See* Maj. Op. at 11. This is not indicative of a signature crime because on both occasions, the events at issue occurred when T.B. and G.B. were in bed, making their bedrooms the obvious and expected location. Furthermore, that both T.B. and G.B. were in their twenties is likewise insignificant, considering that Tyson was in his twenties and early thirties, respectively, when each event occurred. Contrary to the Majority's opinion, there is

nothing remarkable or remotely "signature" about an adult individual spending time with and engaging in sexual intercourse with other adults close in age.

My esteemed colleagues dismiss these distinguishing characteristics between Tyson's prior rape conviction and the instant matter, stating that "[t]o the extent differences exists [sic] between the two incidents, these differences concern details that are not essential to the alleged common scheme of [Tyson]." Maj. Op. at 11-12 n.3. Consequently, the Majority found wholly inconsequential that Tyson was in T.B.'s and G.B.'s homes for different reasons, contending that the common plan or scheme

> does not require the sexual assault of a women who became tired or weak specifically after donating plasma. The salient facts of each case are that [Tyson] was allowed into the home of an acquaintance, and [Tyson] knew each victim was in a compromised state. After each victim lost consciousness in the early morning hours, [Tyson] had vaginal intercourse with each victim in essentially the same manner.

*Id.*

In my opinion, the Majority's limited analysis of the differences between the two incidents completely misses the point of the common plan or scheme exception. The Majority essentially contends that the differences between Tyson's prior rape conviction and the instant case do not matter. These facts, however, are precisely the type of characteristics that, if similar, would make the two incidents "distinctive and so nearly identical as to

become the signature of the same perpetrator." **See G.D.M., Sr.**, 926 A.2d at 987.

As it stands, the Majority is willing to invoke the common plan or scheme exception, not for the commission of "signature" crimes, as the standard requires, but for the commission of crimes of the same general class, namely a statutorily defined type of rape. Section 3121(a)(3) of the Pennsylvania Crimes Code states that an individual commits the crime of rape "when the person engages in sexual intercourse with a complainant … [w]ho is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring." 18 Pa.C.S.A. § 3121(a)(3). According to what the Majority classifies as the "salient facts" of the two incidents, the commission of section 3121(a)(3) rape is the sole similarity between Tyson's prior rape conviction and the alleged crime that occurred in this case. This Court has acknowledged that "[t]he essential elements of the act of rape, as well as other sexual crimes, will necessarily produce any number of similar characteristics when two acts of rape are scrutinized for shared features[.]" **Commonwealth v. Frank**, 577 A.2d 609, 614 (Pa. Super. 1990) (quotations and citation omitted). Therefore, under the Majority's analysis, evidence is admissible as a common plan or scheme simply because a person has allegedly committed the same crime twice. This is in direct contravention to the general rule excluding evidence of other crimes. **See** Pa.R.E. 404(b)(1); **Spruill**, 391 A.2d at 1049-50.

Furthermore, another notable and distinguishing factor between the Tyson's prior rape conviction and the current matter is the fact that G.B. allegedly awoke to find Tyson engaging in unwanted sexual contact with her only to soon thereafter fall back to sleep and have Tyson allegedly engage in non-consensual sexual intercourse with her again. Affidavit of Probable Cause, 11/13/12. According to the Commonwealth's affidavit of probable cause, G.B. indicated that after the first time she awoke to find Tyson having sexual intercourse with her, she told him to stop, fell asleep again, and then awoke to find Tyson naked in her kitchen. *Id.* After she allegedly told him again that she did not want to have sex with him, she went back to sleep and awoke once more to find Tyson having sexual intercourse with her. *Id.* Similar events are totally absent from the incident that resulted in Tyson's prior rape conviction. *See* N.T., 6/6/13, Exhibit C-1 at 3.

The Majority asserts that this distinguishing series of events "only reinforces the conclusion that [Tyson] engaged in a common scheme of non-consensual intercourse with unconscious victims" and that it tends to show that Tyson "saw and seized yet another opportunity to have non-consensual vaginal intercourse with a female acquaintance whose unconscious state rendered her unable to consent or to resist verbally or physically." Maj. Op. at 12. While this may be true, this evidence also tends to show Tyson had consent to engage in sexual contact with G.B., especially in light of his claim that G.B. was awake during this encounter. Nevertheless, it is undisputed

that this series of events is unlike anything that occurred during Tyson's prior rape, further distinguishing the two incidents.

Therefore, in my view, while there are some similarities between Tyson's prior rape and this case, these similarities do not satisfy the standard of being "distinctive and so nearly identical as to become the signature of the same perpetrator." **See G.D.M., Sr.**, 926 A.2d at 987. To the contrary, the similarities between the two incidents establish, at most, the commission of crimes or conduct of the same class, namely sexual assault. **See Roney**, 79 A.3d at 606. In this regard, neither incident provides proof of any particular distinctive pattern of behavior, and therefore, does not provide evidence of a "signature" crime. Accordingly, I must conclude that the trial court did not err in finding that the facts surrounding Tyson's prior rape conviction and this case did not present a common plan or scheme and properly excluded the evidence of his prior conviction.

Moreover, our Court has held that "'the importance of the time period is inversely proportional to the similarity of the crimes in question.'" **Commonwealth v. Aikens**, 990 A.2d 1181, 1185 (Pa. Super. 2010) (quoting **Commonwealth v. Luktisch**, 680 A.2d 877, 879 (Pa. Super. 1996)). Thus, in my opinion, because of the dissimilarities inherent in the two incidents, the ten-year gap (or even the five-year gap that the Majority asks for us to contemplate) weighs heavily against the admission of Tyson's

prior rape conviction. *See Commonwealth v. Shively*, 424 A.2d 1257, 1259 (Pa. 1981) (excluding evidence of a prior bad act that occurred only seven months prior where the Court failed to "perceive enough similarity between the two episodes to allow admission of the prior activity").

I further agree with the trial court's finding that "if the conviction was allowed[,] it would be so prejudicial and inflammatory as to outweigh its evidentiary value." Trial Court Opinion, 9/18/13, at 4. Our Court has long held that "[t]he Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts." *Commonwealth v. Ross*, 57 A.3d 85, 98-99 (Pa. Super. 2012) (en banc), *appeal denied*, 72 A.3d 603 (Pa. 2013). While I reach the conclusion that evidence of Tyson's prior rape conviction is not admissible under the common plan or scheme exception, I do so while acknowledging that there are some similarities present between the two incidents; namely, alleged non-consensual sexual intercourse with a sleeping victim. Therefore, given that similarity between the two incidents, it is entirely possible that evidence of Tyson's prior rape conviction could lead the factfinder to believe that Tyson raped G.B. without regard to the facts of this case, which are significantly dissimilar to the prior case. Thus, the prior conviction's prejudicial impact on Tyson's case far outweighs any probative evidentiary value.

Although the learned Majority acknowledges the prejudicial nature of the evidence, it nonetheless asserts that the trial court can avoid the potential for unfair prejudice by offering a cautionary instruction "to advise the jury of the limited purpose of the evidence and to clarify that the jury cannot treat the prior crime as proof of [Tyson]'s bad character or criminal tendencies." Maj. Op. at 14. In other words, the Majority believes that instructing the jury to ignore the very reason for which the Commonwealth seeks to offer the evidence of Tyson's prior rape conviction will prevent any unfair prejudice. *See id.* This further supports the notion that the evidence of Tyson's prior rape conviction, in the manner in which the Commonwealth seeks to introduce it, is unfairly prejudicial.

The Majority also places undue emphasis on the Commonwealth's need to present evidence. *See id.* at 14-15. The Majority contends that because identity is not an issue in this case, and the only issue is whether Tyson had consent to engage in sexual contact with G.B., "[i]f evidence of [Tyson]'s prior conviction is excluded, the Commonwealth must rely solely on the uncorroborated testimony of G.B. to counter [Tyson]'s defense of consent to vaginal intercourse." *Id.* In my view, however, it is entirely possible that G.B.'s testimony could cause a jury to find that she did not consent to engage in sexual contact with Tyson. The most direct source of evidence of whether G.B. consented to sexual contact with Tyson is G.B. More troubling is that based on the Majority's conclusion, in every case where the sole

evidence is the testimony of the victim, the Commonwealth's need to present the prior bad acts evidence will trump the prohibition on the presentation of such evidence.

The Majority relies on **Commonwealth v. Gordon**, 673 A.2d 866 (Pa. 1996), in support of its argument that the Commonwealth has demonstrated a need to present evidence of Tyson's prior rape conviction. **See** Maj. Op. at 14-15. In **Gordon**, our Supreme Court held that "[w]hether relevant evidence is unduly prejudicial is a function in part of the degree to which it is necessary to prove the case of the opposing party." **Gordon**, 673 A.2d at 870. The Supreme Court determined in that case that

> the Commonwealth was required to prove that a non-consensual touching occurred, the purpose of which was sexual gratification. [The defendant] denies that the touching occurred, and since the uncorroborated testimony of the alleged victim in this case might reasonably lead a jury to determine that there was a reasonable doubt as to whether Gordon committed the crime charged, it is fair to conclude that the other crimes evidence is necessary for the prosecution of the case.

**Id.**

**Gordon** is clearly distinguishable from the instant matter. Here, Tyson readily admits that he had sexual contact with G.B. The only issue that the parties dispute, as the Majority acknowledges, is whether Tyson had consent to engage in such contact. In **Gordon**, however, the defendant denied that he ever touched the alleged victim at all. **Id.** Thus, because

- 13 -

Tyson admits to engaging in sexual contact with G.B., and the only issue is consent, the most direct source of whether Tyson had consent, as stated above, is G.B. Thus, the Commonwealth's need to present evidence here is not akin to that in *Gordon*.

This case is also distinguishable from other cases in which this Court has found that the Commonwealth had demonstrated a need to present prior bad acts evidence. For example, this Court has held that the Commonwealth demonstrated a need to present evidence of a defendant's prior bad acts where the alleged victim in a sexual assault case failed to promptly report the molestation. *Commonwealth v. Smith*, 635 A.2d 1086, 1090 (Pa. Super. 1993); *Commonwealth v. Frank*, 577 A.2d 609, 618 (Pa. Super. 1990). Our Court also found that the Commonwealth demonstrated a need for prior bad acts evidence where the defendant had the ability to attack the credibility of the victims. *Commonwealth v. Luktisch*, 680 A.2d 877, 879 (Pa. Super. 1996). Here, the record reflects that G.B. promptly reported the alleged sexual assault, *see* Affidavit of Probable Cause, 11/13/12, and there is no indication in the record that Tyson will be able to attack G.B.'s credibility. Accordingly, there is no support for the Majority's argument that the Commonwealth demonstrated a need to present evidence of Tyson's prior rape conviction.

I also respectfully disagree with the Majority's conclusion that Tyson's prior rape conviction is admissible pursuant to the absence of mistake

exception to Rule 404(b). Because the application of the common plan or scheme and absence of mistake exceptions are similar in nature, I rely on my analysis of the common plan or scheme exception as applied in this case. *See Commonwealth v. Boczkowski*, 846 A.2d 75, 86 (Pa. 2004) (stating that courts may admit prior bad acts evidence under the "absence of mistake or accident" exception where "the manner and circumstances" of two crimes are "remarkably similar"). Based on that analysis, I cannot conclude that Tyson's prior rape conviction is "remarkably similar" to the instant matter.

In its analysis of the applicability of the absence of mistake exception, the Majority once again simply dismisses the differences between the two incidents, concluding that "the exact **reason** the victim was in a compromised state – [is] not essential to the question of whether [Tyson] mistakenly believed G.B. consented to sexual intercourse." Maj. Op. at 17 (emphasis in original). Although the reason T.B. and G.B. were in a compromised state is not probative of whether Tyson had consent to engage in sexual contact with G.B., it is nonetheless important to the determination of whether the two incidents were "remarkably similar." *See Boczkowski*, 846 A.2d at 86.

Notably, the Majority points to Tyson having been acquaintances with both T.B. and G.B. and an invited guest in each of their homes as similarities between the two incidents. *See* Maj. Op. at 16. These similarities between

the two incidents are not probative of whether Tyson had consent to engage in sexual contact with G.B., but the Majority nonetheless relies on them in applying the absence of mistake exception. The Majority cannot rely on those two similarities to argue that the absence of mistake exception applies while dismissing the differences that exist between the two incidents as not probative of the determination of consent. The Majority's disregard for the differences between the two incidents ignores the standard for admitting prior bad acts evidence under the absence of mistake exception.

Finally, I cannot emphasize enough that our standard of review requires a finding of an abuse of discretion by the trial court. **Commonwealth v. Flamer**, 53 A.3d 82, 86 (Pa. Super. 2012). "[A]n abuse of discretion may not be found merely because the appellate court might have reached a different conclusion[.]" **Commonwealth v. Williams**, 91 A.3d 240, 248-49 (Pa. Super. 2014) (quoting **Commonwealth v. Garcia**, 661 A.2d 1388, 1394–95 (Pa. Super. 2004)). Here, the trial court heard argument on this matter and made a decision that is supported by the evidence of record. The trial court found that the evidence of Tyson's prior rape conviction did not fit within the common plan or absence of mistake exceptions to the rule precluding evidence of prior crimes. Trial Court Opinion, 9/18/13, at 4. Although there is one central similarity alleged between Tyson's prior rape conviction and the current matter, i.e., a sleeping victim, I cannot conclude, based on my review of the

certified record and pertinent case law, that the trial court abused its discretion in refusing to focus solely on this similarity in making its decision.

Based on the foregoing, I would conclude that the trial court did not abuse its discretion by excluding the evidence of Tyson's prior rape conviction and would therefore affirm.

Bender, P.J.E. and Ott, J. join this Dissenting Opinion.