J-S27023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TROY MCCOY :
:
Appellant : No. 166 EDA 2022

Appeal from the Judgment of Sentence Entered October 25, 2021
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004774-2020

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.: **FILED NOVEMBER 16, 2022**

Appellant Troy McCoy appeals from the judgment of sentence imposed following his conviction for aggravated assault and related offenses. Appellant challenges the sufficiency and weight of the evidence, the trial court's evidentiary rulings, and the discretionary aspects of his sentence. We affirm.

We adopt the trial court's summary of the facts and procedural history underlying this case. *See* Trial Ct. Op., 3/21/22, at 1-4. Briefly, on August 9, 2020, Appellant and Shakerra Bonds (co-defendant) visited Sesame Place with a group of family members. N.T. Trial, 7/8/21, at 166. While Appellant was in line for the carousel ride, a 17-year-old employee (the victim) asked Appellant to pull up his face mask in accordance with the park's COVID-19 policy. N.T. Trial, 7/7/21, at 125. After Appellant became argumentative, the victim walked away in order "to avoid any problems." *Id.* at 127. Later that day, the victim was in the operating booth for another ride at the park. *Id.*

at 128.  After Appellant spotted the victim, he demanded to be released from the ride, then approached the victim and asked if he wanted to go somewhere private to fight.  *Id.* at 133.  The victim responded that he did not want to fight and then pressed the call button for assistance.  *Id.* at 133-34.  As staff members escorted the victim to the employee break room for his own protection, co-defendant began following the victim and cursing at him.  *Id.* at 134.  While the victim's back was turned, Appellant jumped over a fence and punched the victim in the left side of his face.  *Id.* at 57.  As a result of the attack, the victim suffered a broken jaw, underwent surgery, and spent two weeks in the hospital with his jaw wired shut.  *Id.* at 148.

Appellant was subsequently arrested and charged with aggravated assault, recklessly endangering another person (REAP), simple assault, harassment, and two counts of disorderly conduct.[1]  Appellant's co-defendant was also charged with simple assault and other offenses for her involvement in the attack.  On July 7, 2021, both matters proceeded to consolidated jury trial.  Ultimately, on July 9, 2021, Appellant and co-defendant were convicted of all charges.  On October 25, 2021, the trial court sentenced Appellant to a term of five to ten years' incarceration for aggravated assault and a concurrent

---

[1] 18 Pa.C.S. §§ 2702(a)(1), 2705, 2701(a)(1), 2709(a)(1), and 5503(a)(1), respectively.

term of two years' probation for REAP.[2]  The trial court also ordered Appellant to pay restitution.

Appellant filed a timely post-sentence motion, which the trial court denied.  Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.  The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises multiple issues, which we have reordered as follows:

1. Did the trial court err in permitting testimony regarding Appellant's pre-arrest silence?

2. Did the trial court err in admitting the hearsay testimony of Detective Viscardi?

3. Was the verdict of guilty of aggravated assault supported by sufficient evidence?

4. Was the verdict of guilty of aggravated assault against the weight of the evidence?

5. Did the trial court abuse its discretion in sentencing Appellant by imposing manifestly excessive sentences, failing to consider all relevant factors, and relying on improper factors in imposing said sentence?

Appellant's Brief at 10.

_____

[2] Appellant's sentence for both aggravated assault and REAP were within the standard guideline range.  At the time of sentencing, Appellant's prior record score (PRS) was a two.  Under the Sentencing Guidelines, the standard minimum guideline range for aggravated assault is forty-eight to sixty-six months of confinement, plus or minus twelve months for aggravating or mitigating circumstances.  *See* 204 Pa.Code §§ 303.15, 303.16(a).  For REAP, the standard minimum guideline range is restorative sanctions to nine months, plus or minus three months for aggravating or mitigating circumstances.  ***See id.***

**Pre-Arrest Silence**

In his first issue, Appellant argues that the trial court erred by allowing the Commonwealth to elicit testimony concerning Appellant's pre-arrest silence. Appellant's Brief at 24.

By way of background to this claim, we note that prior to trial, the trial court rejected the Commonwealth's request to question a Sesame Place security supervisor, Sergeant Jesus Hernandez Ceron, about Appellant's refusal to provide a statement immediately after the incident. N.T. Pre-Trial Mot. Hr'g, 7/6/21, at 8-18. When the issue resurfaced at trial, the court reiterated that it would "err on the side of caution" as it did not "feel comfortable letting anyone refer to the defendant's right not to speak." N.T. Trial, 7/8/21 at 79-80. However, the court warned both Appellant and co-defendant's counsel that that they "need[ed] to be careful when [they] cross-examine[d] because if [they] even go near it[, the court was] going to allow it." *Id.* at 79.

Later that day, co-defendant's counsel asked Sergeant Ceron about a statement that Appellant made to him after the incident occurred. *Id.* at 117-18. Appellant did not object. *Id.* Before the Commonwealth began re-direct examination, the trial court stated that the co-defendant had "opened the door" for the Commonwealth to question Sergeant Ceron about statements Appellant made after the incident. *Id.* at 119. Appellant did not object. *Id.*

Thereafter, the following exchange occurred:

[The Commonwealth]: There was another statement that [Appellant] made to you, correct, that you didn't previously discuss on your [d]irect [examination], right?

[Sergeant Ceron]: Correct.

[The Commonwealth]: And what [Appellant] tells you is what?

[Sergeant Ceron]: He said, "Don't touch me. I don't want to talk to you."

[The Commonwealth]: So, you're attempting to talk to him, correct?

[Sergeant Ceron]: Correct.

[The Commonwealth]: Why are you attempting to talk to him?

[Sergeant Ceron]: I want to know what happened.

[The Commonwealth]: In response to you trying to figure out what happen[ed], what does [Appellant] tell you?

[Sergeant Ceron]: He doesn't want to talk. Don't touch me.

N.T. Trial, 7/8/21, at 120. On re-cross examination, both Appellant and co-defendant's counsel continued to question Sergeant Ceron about his interactions with Appellant after the incident. *Id.* at 120-23.

On appeal, Appellant argues that the trial court erred in concluding that co-defendant's counsel "opened the door" to testimony concerning Appellant's pre-arrest silence. Appellant's Brief at 27. Appellant claims that "[i]n essence, the trial court conditioned the protection of Appellant's constitutional rights on the requirement that co-defendant not open the door by eliciting evidence helpful to her defense." *Id.* Further, Appellant contends that the Commonwealth relied on this testimony during closing argument, when the Commonwealth "lump[ed] Appellant's silence with his flight and suggest[ed]

that both [were] evidence that Appellant knew that he committed a crime and consciousness of guilt." *Id.* at 27. Therefore, Appellant concludes that even if the testimony was properly admitted, "the use of the evidence to infer guilt was in violation of Appellant's constitutional rights." *Id.*

The Commonwealth responds that Appellant has waived these claims by failing to object to the Commonwealth's questions during re-direct examination or the trial court's ruling that co-defendant's counsel had "opened the door" to such testimony. Commonwealth's Brief at 32. Further, the Commonwealth argues that Appellant waived his challenge to the Commonwealth's statements during cross-examination. *Id.*

Initially, we must determine whether Appellant has preserved his claim for review. It is well settled that "[t]he absence of a contemporaneous objection below constitutes a waiver of the claim on appeal." *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1145 (Pa. Super. 2017) (citation and quotation marks omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). As this Court has explained, the trial court must be given "an opportunity to correct errors at the time they are made. A party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008) (citations omitted and some formatting altered).

Here, the record confirms that Appellant did not object to the trial court's ruling that co-defendant's counsel "opened the door" to testimony about what

Appellant said to Sergeant Ceron after the incident, nor did he object during the Commonwealth's redirect examination of Sergeant Ceron. **See** N.T. Trial, 7/8/21, at 119-20. Therefore, that claim is waived. **See Rodriguez**, 174 A.3d at 1145.

Further, to the extent Appellant challenges the Commonwealth's references to Appellant's pre-arrest silence during closing argument, Appellant did not raise that issue at trial or in his Rule 1925(b) statement. **See** N.T. Trial, 7/9/21, at 52-53; Rule 1925(b) Statement, 3/2/22. Therefore, this claim is also waived. **See Rodriguez**, 174 A.3d at 1145; **see also Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005) (stating that "[a]ny issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived" (citation omitted)). Accordingly, Appellant is not entitled to relief.

**Hearsay Testimony**

Appellant next argues that the trial court erred in allowing the Commonwealth to elicit inadmissible hearsay testimony from Detective Christopher Viscardi. Appellant's Brief at 29.

By way of background, we note that at trial, co-defendant's counsel called Detective Viscardi to testify about the contents of the criminal complaint and the victim's prior statement that he had accidentally pushed and/or hit co-defendant during the attack. N.T. Trial, 7/8/21, at 160. On cross-examination, the trial court permitted the Commonwealth to elicit the following testimony from Detective Viscardi:

[The Commonwealth]: When you filed this complaint you had talked to how many other witnesses when you seen their statements?

[Appellant]: Objection, Your Honor. Hearsay.

THE COURT: When you filed this complaint you had talked to how many other witnesses when you seen their statements? That was the question.

[Appellant]: Yes. The objection is that it's suggesting that they told him certain information that led him to his conclusion.

THE COURT: The only thing he's asking is if he talked to him. As long as he asked that question that's okay.

[Appellant]: Understood.

THE COURT: Overruled.

[The Commonwealth]: How many witnesses did you talk to or see statements from?

[Detective Viscardi]: 30-plus.

[The Commonwealth]: Included in those, was Beyonce Best included?

[Detective Viscardi]: Yes.

[The Commonwealth]: Was Nadia Gonzalez included in that?

[Detective Viscardi]: Yes.

[The Commonwealth]: Was Andrew Beck included in that?

[Detective Viscardi]: Yes.

[The Commonwealth]: Was Captain Reynolds and Sergeant Ceron included in that information?

[Detective Viscardi]: Yes.

[The Commonwealth]: After you talked to those witnesses and gathered the evidence, that's when you wrote in your criminal complaint that [the victim] may have accidentally—

[Appellant]: I object again.

THE COURT: You can object but [co-defendant's counsel] questioned him extensively on that, and this is cross-examination so I'm going to allow it. He was questioned on it on direct. You may not have asked questions about it but, certainly, it's proper cross-examination in my view. I'll overrule the objection.

[The Commonwealth]: So, after you talked to at least those five witnesses that testified in court yesterday and today who told us that they never saw [the victim] touch, shove, push, hit [co-defendant], that's when you filled out the affidavit of probable cause and you wrote in the probable cause that [the victim] may have accidentally touched [co-defendant]?

[Detective Viscardi]: Yes.

[The Commonwealth]: And you would have taken into account, both, the witness's statements, as well as what [the victim] had told you, correct?

[Detective Viscardi]: Correct.

[The Commonwealth]: And when you wrote that, that is what you believed happened?

[Detective Viscardi]: Yes.

N.T. Trial, 7/8/21, at 160-62.

On appeal, Appellant cites to this portion of testimony and asserts that Detective Viscardi "was permitted to testify to what upwards of thirty people told him and to suggest that what they told him was consistent with what the victim told him." Appellant's Brief at 32. Therefore, Appellant concludes that Detective Viscardi's testimony was inadmissible hearsay and that the trial court erred in concluding that co-defendant opened the door to that testimony on cross-examination. *Id.* at 32-33.

The Commonwealth responds that Appellant "does not advance any argument about how the testimony was a statement, out of court, and/or

uttered for its truth." Commonwealth's Brief at 44. Further, the Commonwealth argues that Detective Viscardi's statements were admissible to show "how he proceeded in the investigation." *Id.* at 45. Finally, the Commonwealth contends that any alleged error was harmless, as the testimony about the victim's statement was beneficial to Appellant's case and did not have any prejudicial effect. *Id.* Therefore, the Commonwealth asserts that Appellant is not entitled to relief.

We review a trial court's evidentiary rulings for an abuse of discretion. *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. Super. 2020) (citation omitted), *appeal denied*, 250 A.3d 1158 (Pa. 2021).

Hearsay is defined as "a statement that . . . the declarant does not make while testifying at the current trial or hearing; and . . . offer[ed] in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Generally, hearsay evidence is inadmissible "except as provided by [the Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

Our Supreme Court has explained:

> The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. But it is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted. The trial court, in exercising discretion over the admission of such statements, must balance the prosecution's need for the statements against any prejudice arising therefrom.

*Commonwealth v. Chmiel*, 889 A.2d 501, 532-33 (Pa. 2005) (citations omitted); *see also Commonwealth v. Jones*, 658 A.2d 746, 751 (Pa. 1995) (concluding that a police officer's testimony was proper because it was not offered for the truth of the matter asserted, was admitted in order to explain police conduct, and merely repeated matters covered in testifying witnesses' own testimony).

Here, the trial court addressed Appellant's claim as follows:

[T]he first statement uttered by Detective Viscardi (that he spoke to thirty witnesses) is not hearsay. Detective Viscardi did not testify to what those witnesses said, only that he spoke to them. Further, while Detective Viscardi's second statement (that the information gathered was used when writing the complaint) may constitute hearsay, co-defendant's counsel "opened the door" to the testimony when he questioned Detective Viscardi extensively on the subject during direct examination. Co-defendant's counsel asked a plethora of questions about the content of the incident report, ranging from what information witnesses provided for the complaint to whether the witnesses used specific terms that Detective Viscardi included. N.T. Trial, 7/8/2021, 134-140. "If a defendant delves into what would be objectionable testimony on the part of the Commonwealth, the Commonwealth can probe further into the objectionable area." *Commonwealth v. McCabe*, 498 A.2d 933, 934 (Pa. Super. 1985). Therefore, this [c]ourt did not err in allowing hearsay testimony but properly admitted a statement that was heavily questioned during direct examination.

Trial Ct. Op. at 6-7.

Following our review of the record, we discern no abuse of discretion by the trial court. *See Rivera*, 238 A.3d at 492. Although Detective Viscardi referred to some of the witnesses' statements during his testimony, he did so in response to questions about what information he relied on when preparing

the criminal complaint. Therefore, the trial court did not err in overruling Appellant's hearsay objection. **See Chmiel**, 889 A.2d at 532 (concluding that "it is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted" (citations omitted)). Accordingly, Appellant is not entitled to relief.

## Sufficiency of the Evidence

Appellant next argues that the Commonwealth failed to prove the intent element for aggravated assault. Appellant's Brief at 14. Specifically, although Appellant concedes that the victim suffered serious bodily injury,[3] he claims that a single punch does not prove that he acted with the intent to cause serious bodily injury. **Id.** at 18 (citing **Commonwealth v. Alexander**, 383 A.2d 887 (Pa. 1978)). Therefore, Appellant concludes that there was insufficient evidence to sustain his conviction for aggravated assault.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence,

---

[3] We note that serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301; **see also Commonwealth v. Nichols**, 692 A.2d 181, 184 (Pa. Super. 1997) (holding that a broken jaw and being confined to a liquid diet constitutes a serious bodily injury).

we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

Section 2702(a)(1) of the Crimes Code states that "[a] person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1).

"When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm." *Commonwealth v. Burton*, 2 A.3d 598, 602 (Pa. Super. 2010) (*en banc*). In such cases, "the statute's intent requirement can be met if the defendant acts recklessly under circumstances manifesting an extreme indifference to human life." *Id.* (citation omitted).

Our Supreme Court has stated that the defendant's intent may be inferred from the circumstances surrounding an attack. *Alexander*, 383 A.2d at 889. Such factors include (1) whether the defendant "was

disproportionately larger or stronger than the victim," (2) whether the defendant would have escalated his attack but was restrained from doing so; (3) whether the defendant possessed a weapon, and (4) "statements before, during, or after the attack which might indicate [defendant's] intent to inflict further injury upon the victim." *Id.* (citation omitted).

In *Alexander*, the defendant was convicted of aggravated assault after he delivered a single punch to the victim's head. *Id.* at 888. Although the victim was injured, he did not sustain serious bodily injury. On appeal, our Supreme Court explained that because the victim did not sustain serious bodily injury, the Commonwealth was required to prove that Appellant acted with intent to cause such injury. *Id.* at 889. However, the Court noted that the surrounding circumstances of the attack were insufficient to prove intent, as the defendant "delivered one punch and walked away." *Id.* Therefore, the *Alexander* court reversed this Court's order affirming the defendant's judgment of sentence. *Id.* at 890.

Here, the trial court addressed Appellant's claim as follows:

This court is without a doubt that the evidence presented by the Commonwealth is sufficient to support Appellant's conviction for aggravated assault. Appellant jumped over a fence and charged at [the v]ictim, a seventeen-year-old minor, before sucker punching him in the face. N.T. Trial, 7/7/2021, at 58. Appellant struck [the v]ictim with such force that there was an audible sound upon contact and it knocked [the v]ictim onto the floor, unconscious. N.T. Trial, 7/8/2021, at 22. This was not an accidental hit. Even if Appellant did not necessarily intend to break [the victim's] jaw in two places[,] to the extent that it had to be operated on and wired shut for two weeks, Appellant should have known that sucker punching a minor from behind would

- 14 -

result in serious injury. At the very least, Appellant's behavior was reckless—no one throws a punch and reasonably expects the victim to not get hurt. Therefore, the Commonwealth adequately proved beyond a reasonable doubt Appellant's *mens rea* and any assertion to the contrary is without merit.

Trial Ct. Op. at 14 (some formatting altered).

Following our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find no error in the trial court's conclusion. **See Palmer**, 192 A.3d at 89. As noted previously, there is no dispute that the victim suffered serious bodily injury as a result of the attack.[4] Therefore, the Commonwealth was only required to prove that Appellant acted "recklessly under circumstances manifesting an extreme indifference to human life." **Burton**, 2 A.3d at 602 (citation omitted). At trial, the Commonwealth presented witness testimony establishing that Appellant reacted angrily towards the victim when directed to comply with the park's mask policy, then later confronted the victim and attempted to start a physical altercation. After the victim walked away from Appellant, witnesses testified that Appellant "came out of nowhere," approached the victim from behind, and "punched [the victim] extremely hard" in the left side of his face, at which point the victim "blacked out" and fell to the ground. N.T. Trial,

_____

[4] As noted previously, Appellant concedes that the victim suffered serious bodily injury. Further, we note that at trial, the victim testified that his jaw was broken in two places, which required him to undergo multiple surgeries and spend two weeks in the hospital with his jaw wired shut. N.T. Trial, 7/7/21, 140, 142, 147-48. Under these circumstances, we conclude that there was sufficient evidence to establish "serious bodily injury" for purposes of aggravated assault.

- 15 -

7/7/21, at 55-58, 137; *see also* N.T. Trial, 7/8/21, at 22. Beyonce Best testified that while the victim was on the ground, Appellant placed the victim in a "headlock" while wrapping his legs around the victim's body. N.T. Trial, 7/7/21, at 55. Under these circumstances, we agree with the trial court that there was sufficient evidence to establish that Appellant acted recklessly. *See Burton*, 2 A.3d at 602; *Alexander*, 383 A.2d at 889. Accordingly, Appellant is not entitled to relief.

## Weight of the Evidence – Aggravated Assault

In his next claim, Appellant argues that his conviction for aggravated assault was against the weight of the evidence. Appellant's Brief at 11. In support, Appellant asserts that both the victim and witness Beyonce Best provided inconsistent statements regarding the details of the assault and that their testimony "was so contradictory and inconsistent that the guilty verdict shocks one's sense of justice." *Id.* at 20-21. Further, Appellant contends that the victim "may have gained financially" from the incident, which "goes to his bias." *Id.* at 22. Therefore, Appellant contends that he is entitled to a new trial.

In reviewing a weight claim, this Court has explained:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that

right may be given another opportunity to prevail. The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.

At trial, the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. Issues of witness credibility include questions of inconsistent testimony and improper motive. A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit. . . .

[I]nconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence.

***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080-81 (Pa. 2017) (citations and quotation marks omitted).

Here, the trial court addressed Appellant's weight claim as follows:

[T]he Commonwealth presented a plethora of evidence from a variety of witnesses, including [the v]ictim. Each witness consistently testified to the same general story outlined above: Appellant and [his co-d]efendant physically assaulted [the v]ictim after he asked them to wear their masks properly. The Commonwealth also introduced photographs and video of the incident as exhibits. Thus, the verdict is not so contrary to the evidence as to shock the conscience. Appellant's weight of the evidence claim is meritless.

Trial Ct. Op. at 15.

Following our review of the record, we discern no abuse of discretion by the trial court in rejecting Appellant's weight claim. ***See Jacoby***, 170 A.3d at 1080-81. Although Appellant claims that there were alleged inconsistencies in the witnesses' testimony, the jury was permitted to consider the evidence

and resolve any alleged inconsistencies in the Commonwealth's favor. *See id.* Therefore, Appellant is not entitled to relief on this issue.

**Discretionary Aspects of Sentence**

In his final claim, Appellant challenges the discretionary aspects of his sentence. Appellant's Brief at 34. Specifically, Appellant contends his sentence is manifestly excessive and unreasonable because the trial court "improperly focused on the nature of the crime" and did not consider Appellant's character, history, or rehabilitative needs. *Id.* at 42. Further, Appellant argues that although his sentence for aggravated assault was within the standard range, it was "excessive" in light of the fact that Appellant punched the victim one time and "did not threaten the victim, did not have a weapon, and did not attempt to further strike or hit" the victim after the initial attack. *Id.* at 41. Further, Appellant claims that the trial court relied on inappropriate sentencing factors by following the sentencing recommendation from the presentence investigation (PSI) report, which was "based on consideration of uncharged conduct" and the incorrect assertion that Appellant failed to express remorse. *Id.* at 41-42. Therefore, Appellant requests that we vacate his judgment of sentence and remand for resentencing. *Id.* at 42.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

(1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Here, the record reflects that Appellant preserved his sentencing claims in his post-sentence motion, filed a timely notice of appeal, and included the issues in his Rule 1925(b) statement. Appellant has also included a Rule 2119(f) statement in his brief.[5] Further, Appellant's sentencing claims raise a substantial question for our review. *See Commonwealth v. Caldwell*, 117

_____

[5] We note that in his Rule 2119(f) statement, Appellant cites to a case where this Court found that the appellant raised a substantial question by claiming that the trial court failed to provide adequate reasons for the appellant's sentence. However, because Appellant does not develop this claim in his brief, we decline to address that issue on appeal. *See Commonwealth v. Garcia*, 661 A.2d 1388, 1395-96 (Pa. Super. 1995) (noting that issues that are not developed or supported with appropriate argument will be deemed waived); *see also* Pa.R.A.P. 2119(a), (b), (c) and (d).

- 19 -

A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question" (citations omitted)); ***Commonwealth v. Downing***, 990 A.2d 788, 792 (Pa. Super. 2010) (explaining that the defendant's claim that "the trial court relied on an improper factor raises a substantial question permitting review" (citations omitted)); ***see also Commonwealth v. Coulverson***, 34 A.3d 135, 143 (Pa. Super. 2011) (concluding that the defendant raised a substantial question in claiming that the trial court focused on the seriousness of the offense and failed to consider the defendant's rehabilitative needs).  Therefore, we will review the merits of Appellant's claims.

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of offense in relation to impact on victim and community, and

[the] rehabilitative needs of the defendant." ***Commonwealth v. Fullin***, 892 A.2d 843, 848 (Pa. Super. 2006) (citation omitted and formatting altered).

"[T]he trial court is required to consider the particular circumstances of the offense and the character of the defendant," including the defendant's "prior criminal record, age, personal characteristics, and potential for rehabilitation." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted). This Court has held that "where the sentencing judge had the benefit of a [PSI report], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Id.*** (citation omitted). This Court may only disturb a standard range sentence if we find that the circumstances of the case rendered the application of the guidelines "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).

Here, at the outset of the sentencing hearing, Appellant's counsel objected to "the reference to any [un]charge[d] or [un]prosecuted criminal conduct" in the PSI report. N.T. Sentencing Hr'g, 10/25/21, at 5. In response, the trial court stated: "Yeah, I won't take that into consideration. . . . That's not a conviction and there's been no disposition. So that's not a factor in my mind." ***Id.***. Ultimately, after considering testimony from Appellant, Appellant's witnesses, and arguments from counsel, the trial court explained:

> When imposing sentence, there are a number of things, as the lawyers know, that I must take into consideration: The facts of the case, the nature and character and background of the defendant, the sentencing guidelines, the impact upon the

community, the defendant, the need to protect the community, and, of course, your need for rehabilitation.

The facts of this case are clear. [Appellant and co-defendant, along] with family members[,] were at Sesame Place during the pandemic when people were required to wear masks. One might suggest we should still be wearing them as some of you are.

In any event, Sesame Place was open. And I might add, the young people working there, teenagers or college age, are there either to make life better for themselves, notwithstanding the risks of working at a park during a pandemic or because they had to and because they wanted to go to college.

In any event, I might point out . . . all of them were quite polite and respectful when they appeared here. And there's nothing to suggest that they were anything but that on the day of this incident contrary to the testimony and inferences that the jury was asked to draw.

For what it's worth, I thought they all represented Sesame Place appropriately, and I would consider hiring them myself if I were in a position of authority of that institution. That's how well I thought they came across and how well they presented. And clearly the jury believed what they had to say.

This was a violent, unprovoked assault on a defenseless teenager. He was struck from behind with such force that his jaw was broken on both sides. [His] teeth, I'm not sure if they were broken or dislodged. But he continues to heal physically and emotionally today, according to the presentence report. The injuries resulted in physical and mental trauma. And that [Appellant] failed to exercise remorse or accept responsibility.

Quite frankly, I think today he has demonstrated a level of remorse and acceptance of responsibility that the probation officer probably didn't see. So I think that he's to get some credit for that.

So I have taken into account the facts. Of course, [Appellant and co-defendant] left, and as was pointed out in the [PSI] report of [co-defendant] having been trained in emergency medicine as an EMT, she left and didn't complete the report and didn't remain to provide a report. And we all recall the video of them running out of the park trying to avoid apprehension. It was really clear to

anyone who saw [it] that that's exactly what they were trying to do.

So I've taken into consideration the facts that were testified to at trial and found presumably by the jury in its verdict. I have taken into account the [PSI] report for each of them subject to the objections of counsel.

But, nevertheless, the [PSI] reports have given me a complete and thorough background, at least in my opinion it did.

[Appellant] has presented a number of witnesses, all of whom testified quite well on his behalf, although I have to admit I am somewhat perplexed by [his mother's testimony that he helped her get off drugs when] he sold drugs previously. But, nevertheless, I have given him credit for the family support and show of support that is in the courtroom today.

\*     \*     \*

[The Sentencing Guidelines] recommend a sentence of 36 months in the mitigated range, 48 to 66 months in the standard, and 78 in the aggravated range [for aggravated assault].

I have taken all of that into account as well as the impact it's had upon the victim. Of course, the impact upon the victim is immeasurable. He at this point still continues to suffer from the consequences of what took place that day, and I can't emphasize it enough. It was completely and unequivocally, at least in my mind and the minds of the jury, unprovoked. You struck him from behind. He could not even defend himself against a violent blow to the face.

The need to protect the community I think is clear as well, and the need for your rehabilitation is just as clear in my mind.

So I have taken all of those things into account. They've all been testified to or covered by the [PSI] report and I believe have been covered by the attorneys.

And lastly, before I forget . . . I have considered the victim impact statements as well. In any event, the [PSI] report for [Appellant] recommends a lengthy sentence of total confinement in the state correctional institution. And as has been pointed out, the guidelines for that offense recommend 48 to 66 months, and that would be on count number [one, aggravated assault].

*Id.* at 62-70.

      In its Rule 1925(a) opinion, the trial court explained:

      Appellant's claim that this court erred in sentencing is meritless. This court found that this was a "violent, unprovoked assault on a defenseless teenager . . . [that] resulted in physical and mental trauma." N.T. Sentencing Hr'g, 10/25/21 at 64. [The v]ictim, a seventeen-year-old child, was working at Sesame Place, in large crowds in the middle of a pandemic, to further better his life when he was struck from behind by Appellant, a forty-year-old grown adult, which resulted in injuries that [the v]ictim is still trying to heal from-over a year later. *Id.* at 63-64. This court found that [the v]ictim had no chance to defend himself against Appellant's violent blow to [the v]ictim's face and the impact of this assault on [the v]ictim is immeasurable. *Id.* at 67. While this court did take into consideration the fact that Appellant demonstrated a level of remorse and acceptance of responsibility during sentencing, this court found that remorse to be overdue, as Appellant failed to show any sort of concern for [the v]ictim when he immediately ran to leave the park after the assault. *Id.* at 64-67. These reasons for sentencing were clearly outlined on the record, despite Appellant's unfounded and perplexing argument to the contrary.

      Accordingly, this court found a sentence of five to ten years in a state correctional institution necessary to protect the public and to rehabilitate Appellant. Appellant's sentence is within the standard range of his Sentencing Guidelines. This court did not rely on improper factors, as Appellant asserts, but rather only needed to rely on the egregious facts of the case, sentencing guidelines, and additional circumstances as noted above. Appellant's assertions that this court abused its discretion in sentencing are meritless.

Trial Ct. Op. at 17-18 (some formatting altered).

      Based on our review of the record, we discern no abuse of discretion by the trial court. *See Raven*, 97 A.3d at 1253. The record reflects that the trial court did not consider improper factors when imposing Appellant's

sentence. Instead, the trial court considered the PSI report, the appropriate sentencing factors, and the mitigating evidence presented at the sentencing hearing. *See Ventura*, 975 A.2d at 1135. Ultimately, the trial court concluded that a standard-range sentence of five to ten years' incarceration was necessary in light of the impact of Appellant's crimes and in order to protect the public. Under these circumstances, we have no basis upon which to conclude that the trial court's application of the guidelines was "clearly unreasonable." *See* 42 Pa.C.S. § 9781(c)(2). Therefore, Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2022